CHANEY v DEPARTMENT OF TRANSPORTATION

Docket No. 96282. Argued March 9, 1994 (Calendar No. 9). Decided
    August 31, 1994. Rehearing denied *post,* 1216.

· Ray Chaney brought an action in the Court of Claims against the
    Department of Transportation, seeking damages for injuries
    sustained when his motorcycle left the roadway of a highway
    entrance ramp and overpass, crossed the shoulder, and struck a
    bridge railing immediately adjacent to, but beyond, the shoul-
    der. The court, James R. Giddings, J., denied summary disposi-
    tion, rejecting the defendant's claim of governmental immunity
    and concluding that guardrails are designed to affect the way
    vehicles travel. The Court of Appeals, SULLIVAN, P.J., and
    MacKENZIE and I. B. TORRES, JJ., citing *Scheurman v Transpor-
    tation Dep't,* 434 Mich 619 (1990), reversed in an opinion per
    curiam, concluding that because the bridge railing was neither
    roadbed nor designed for vehicular travel, governmental immu-
    nity applied (Docket No. 131092). The plaintiff appeals.

    In separate opinions, the Supreme Court held the defendant
    to be immune from liability, and affirmed the judgment of the
    Court of Appeals.

    Justice BRICKLEY, stated that because the bridge railing was
    not physically located within the improved portion of the
    highway designed for vehicular travel, and because it did not
    integrally and directly affect safe vehicular travel on the im-
    proved portion of the highway, the highway exception to gov-
    ernmental immunity is inapplicable.

    1. The statutory grant of governmental immunity is broad,
    and its exceptions are narrowly drawn. The legislative purpose
    underlying the highway exception is fulfilled by requiring
    certain governmental agencies to repair and maintain the
    highway so that the improved portion designed for vehicular
    travel is reasonably safe and convenient for public travel. The
    highway exception normally does not include installations that
    are physically separate from the paved or traveled portion of a
    highway. Rather, the limiting language creating liability under
    MCL 691.1402; MSA 3.996(102) encompasses installations physi-
    cally located within the traveled or paved portion of a highway
    designed for vehicular travel or some installations, even those
    physically located beyond the traveled or paved portion of a

highway, that directly and integrally affect safe vehicular travel on the improved portion.

2. In this case, governmental immunity precludes liability for the bridge railing because it is not physically located within the improved portion of the highway designed for vehicular travel and does not directly and integrally affect vehicular travel along the improved portion of the highway.

Justice RILEY, joined by Justice GRIFFIN, concurring in part and dissenting in part, stated that the majority impermissibly expands liability by misconstruing the plain meaning of the statute at issue. The state is not liable for damages arising from installations directly and integrally affecting vehicular safety on the improved portion of the highway unless the highway is unreasonably unsafe because of physical disrepair of the improved portion of the roadbed designed for vehicular travel.

A bridge railing is not an improved portion of a highway designed for vehicular travel. While a bridge railing is designed for vehicular safety, it is not a portion of the highway on which motor vehicles were designed to travel. The governmental statute does not expressly impose liability for bridge railings. To the contrary, bridge railings, separated from the roadbed by a raised curb and a paved shoulder are akin to sidewalks, crosswalks, or any other installation outside the improved portion of the highway. The unambiguous language of the statute excludes injuries involving the bridge railing.

The majority ignores the narrow issue presented and expands the sovereign immunity exception to include all injuries arising from any installation that directly and integrally affects safe vehicular travel on the improved portion of the highway, in contradiction of the clear language of the statute. While the obvious purpose undergirding the section is to compensate injured persons when the highway is unsafe for vehicular travel, it does so only in very limited circumstances. The statute does not provide blanket liability for all injuries that deprive drivers of conditions essential to safety on the highway itself. It only imposes liability if the injuries arise from the failure to repair or maintain the improved portion of the highway designed for vehicular travel.

The judiciary may not amend statutes to conform to its policy preferences. The Legislature, not the Court, is the law-making authority within the constitutional order of separate powers. Unless the constitution invalidates a legislative enactment, the propriety and wisdom of an enactment is not for the Supreme Court to question.

Justice BOYLE, concurring, stated that the highway exception

to governmental immunity does not encompass accidents aris-
ing out of any installation that directly and integrally affects
safe vehicular travel on the improved portion of a highway
designed for vehicular travel.

Under the highway exception, both the state's duty to main-
tain and repair the highway and its liability for failure to do so
are restricted to the improved portion of the highway designed
for vehicular travel. However, the phrase "improved portion of
the highway designed for vehicular travel" draws no obvious
line. Including in the highway exception some installations,
even those physically located beyond the traveled or paved
portion of a highway, that directly and integrally affect safe
vehicular traffic on the improved portion, is less helpful than
the statute, and is so imprecise that it would foster litigation
with no clear benefit. Rather, the state and counties should be
liable under the highway exception only when they fail to
repair and maintain the paved surface of a roadway, including
objects on and structures supporting that surface, or traffic
signs or signals necessary for safe vehicular travel.

In this case, the plaintiff's claim is barred by governmental
immunity because he does not allege a failure to repair and
maintain the paved surface of the roadway or a traffic sign or
signal.

Chief Justice CAVANAGH, concurring, stated that while Jus-
tices BRICKLEY's and BOYLE's interpretations of the highway
exception to the governmental immunity statute are preferable
from a policy standpoint, Justice RILEY's interpretation is in
accord with the plain language of the statute and the command
of *Ross v Consumers Power (On Rehearing)*, 420 Mich 567
(1984), of broad governmental immunity with narrowly drawn
exceptions. In addition, her interpretation provides an exact
standard, defining not only an injured party's rights but the
government's potential liability. None of the other separate
opinions satisfies each of these components.

Because it is inconceivable that liability under the highway
exception should be so severely limited, the Legislature is
urged to provide a more exhaustive list of exclusions or revise
the statute, illustrating the extent of the highway exception.

Affirmed.

Justice LEVIN, joined by Justice MALLETT, dissenting, stated
that the question presented is whether the Michigan Depart-
ment of Transportation is relieved from liability, under the
highway exception to governmental immunity from tort liabil-
ity, for a defect in design or construction of the concrete wall or
guardrail involved in the accident at issue because they were

erected immediately beyond, and thus outside, the improved portion of the highway designed for vehicular travel. The Court of Appeals, relying on *Scheurman,* held that the circuit judge should have granted the department's motion for summary disposition because the Legislature intended to impose only a duty to keep the traveled roadbed in reasonable repair, and because the concrete wall, while part of the overpass structure, was not designed for vehicular travel, but instead constituted an other installation outside the improved portion of the highway designed for vehicular travel within the meaning of the any-other-installation clause of the highway exception of MCL 691.1402; MSA 3.996(102). It further held that, because the barrier was neither a roadbed nor designed for vehicular travel, governmental immunity applied and the defendant should not be held liable for the plaintiff's injuries. However *Scheurman* is not precedentially binding under the doctrine of stare decisis, because no opinion obtained four signatures. In addition, the fundamental issues in this case were not decided in *Scheurman.* Further, the statement in the plurality opinion in *Scheurman* that the true intent of the Legislature was to impose a duty only to keep the physical portion of the traveled road in reasonable repair is obiter dictum.

The first two sentences of the highway exception impose a duty to keep the traveled roadbed in reasonable repair and a duty, and liability for failure to discharge that duty, to maintain the highway in condition reasonably safe and fit for travel. Case law has consistently held that the liability for failure to discharge the duty to maintain the highway in condition reasonably safe and fit for travel extends to failures of design or construction, including failures to install guardrails as reasonably necessary to maintain the improved portion of the highway designed for vehicular travel in condition reasonably safe and fit for travel. The view that the only statutory duty imposed by the words "in reasonable repair, and in condition reasonably safe and fit for travel" is to keep roadways in repair was repeatedly rejected. The Legislature, surely aware of the consistent judicial construction, extending for seventy-five years from 1889, nevertheless reenacted in 1964 the same language in the governmental tort liability act. Although the Supreme Court, in the thirty years since the enactment of the governmental tort liability act in 1964, has been true, without dissent, to the well-established precedents holding governmental agencies subject to liability for failures to warn, failures to erect barriers, and failures of design, the Legislature has not changed the statutory standard subjecting governmental agen-

cies to liability for failure to keep highways in reasonable repair, and in condition reasonably safe and fit for travel.

In providing, in the fourth sentence of the highway exception, that the duty "to repair and maintain highways, and the liability therefor" shall not extend to "any other installation outside of the improved portion of the highway designed for vehicular travel," the Legislature did not relieve the department of its duty and liability under the first two sentences of the highway exception to repair and maintain the improved portion of the highway designed for vehicular travel in condition reasonably safe and fit for travel, including installation of guardrails reasonably necessary to maintain the improved portion reasonably safe and fit for travel.

The fourth sentence of the highway exception contains two clauses: the repair-and-maintain clause and the any-other-installation clause. Reading the highway exception as a whole, the duty and liability expressly extended in the repair-and-maintain clause to the improved portion of the highway designed for vehicular travel concerns the repair and maintenance of the improved portion. The scope of the obligation is to keep the improved portion in reasonable repair and in condition reasonably safe and fit for travel. That obligation and liability for failure to repair and maintain, under the consistent case law before and after the 1964 reenactment, extends to a failure of design or construction, including a failure to warn or to erect suitable barriers. Although the Legislature clearly did not intend liability for a failure to maintain the unimproved portion of the highway in a condition safe and fit for travel, nothing in the wording of the highway exception suggests an intent to limit the liability of governmental agencies only to certain factors that are necessary to safely maintain the improved portion of the highway.

The Legislature, in providing in the any-other-installation clause that the duty to repair and maintain highways and the liability for failure to do so did not include any other installation outside the improved portion of the highway designed for vehicular travel, relieved the department of the duty and liability to keep the concrete wall in reasonable repair and in condition reasonably safe and fit for travel, not simply because the concrete wall and metal barrier were located immediately beyond and outside the improved portion of the highway designed for vehicular travel, but also because the concrete wall and metal barrier were not designed for vehicular travel. However the plaintiff is not complaining that the concrete wall that was erected was not in reasonable repair or in a condition

reasonably safe and fit for travel on the concrete wall. Rather, he asserts that, under the repair-and-maintain clause, the department failed to design and construct the concrete wall and metal barrier as reasonably necessary to maintain the improved portion of the highway designed for vehicular travel in condition reasonably safe and fit for travel.

A literal or "plain" reading of the any-other-installation clause does not relieve the state and counties of their obligation under the repair-and-maintain clause to keep the improved portion designed for vehicular travel not only in reasonable repair, but also in condition reasonably safe and fit for travel. That obligation, as construed by the Supreme Court, subjects the state and counties to liability for failures of design or construction, including a failure to warn or to erect suitable barriers. The any-other-installation clause should be read in harmony with the repair-and-maintain clause. To hold that there is no duty or liability on the part of the state or counties to maintain the improved portion of the highway in condition reasonably safe and fit for travel deprives the words "and maintain" in the repair-and-maintain clause of any meaning.

The majority misreads the legislative purpose in adding the any-other-installation clause in the fourth sentence. That sentence was crafted to avoid state and county responsibility for the repair and maintenance of sidewalks and crosswalks, traditionally the responsibility of townships and cities, and also to eliminate state and county responsibility for the repair and maintenance of installations like bicycle paths, bridges and medians adjacent to, traversing, or running alongside, state and county highways. It was not crafted to eliminate the liability of the state and counties, and by implication cities and townships, for design and construction defects and for all other failures to maintain, as distinguished from repair, highways in condition reasonably safe and fit for travel. Read as the majority reads it, the highway exception is not a meaningful exception to governmental immunity. The new meaning developed by the majority purposefully ignores one hundred years of adjudication by the Supreme Court. In holding that the highway exception requires nothing more than keeping even a hazardous road in reasonable repair, with liability arising only for accidents resulting from failures to fix potholes, the majority indulges in heavy-handed judicial legislation, rendering the highway exception devoid of any practical meaning.

198 Mich App 728; 499 NW2d 29 (1993) affirmed.

*Gittleman, Paskel, Tashman & Blumberg, P.C.*

(by *Clifford Paskel*); *Bendure & Thomas,* of counsel (by *Mark R. Bendure* and *Sidney A. Klingler*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, for the defendant.

Amicus Curiae:

*Robert A. Koory* and *Elizabeth A. Givens* for Michigan Trial Lawyers Association.

BRICKLEY, J. This case asks us to decide whether the highway exception to governmental immunity[1] encompasses a concrete bridge abutment and adjoining guardrail adjacent to, but beyond the shoulder of, a state trunk line entrance ramp and overpass. The Court of Appeals relied upon our plurality opinion in *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990), to reverse the Court of Claims denial of defendant's motion for summary disposition. While we agree with the result reached by the Court of Appeals, we do not fully endorse its rationale. 198 Mich

[1] MCL 691.1402(1); MSA 3.996(102)(1) provides, in pertinent part, that:

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

App 728; 499 NW2d 29 (1993). We hold that because the abutment and guardrail are neither part of "the improved portion of the highway designed for vehicular travel," nor installations integrally and directly affecting safe vehicular travel upon the improved portion, governmental immunity bars the cause of action set forth in plaintiff's complaint.

I

Plaintiff was injured when his motorcycle left the roadway of a highway entrance ramp and overpass, crossed the shoulder, and struck either a metal guardrail or concrete abutment[2] immediately adjacent to, but beyond, the shoulder. Plaintiff was thrown over the bridge railing and landed next to a median barrier on the highway below, incurring a number of injuries.

Plaintiff filed suit in the Court of Claims, alleging that the entrance ramp was owned by the state and under the jurisdiction and control of defendant who, plaintiff maintained, had responsibility for the design, construction, and maintenance of those bridge railings on the entrance ramp. Plaintiff's complaint specifically alleged that defendant had failed to properly design and

---

[2] Plaintiff does not recall whether he struck the metal guardrail or concrete abutment. Plaintiff's original complaint and the brief filed with this Court describe the guardrail and abutment collectively as a "bridge railing." It appears from a photograph included in both plaintiff's and defendant's appendices that the guardrail merges into the concrete abutment at that point where the entrance ramp becomes a bridge overpass spanning the highway below. Plaintiff has not contested the accuracy of this photograph.

Because any distinction between the guardrail and abutment is irrelevant for purposes of our decision, like the plaintiff, we will, unless otherwise noted, hereinafter refer to this guardrail and abutment collectively as a "bridge railing." Additionally, and unless otherwise noted, we will refer to both the entrance ramp and the overpass as an "entrance ramp."

construct the bridge railing, failed to inspect the entrance ramp for dangerous conditions, and failed to provide adequate warnings of dangers on the entrance ramp. The complaint further alleged that these negligent acts and omissions were the direct and proximate cause of plaintiff's injuries.

Defendant moved for summary disposition and, relying upon our decision in *Scheurman, supra,* argued that because of governmental immunity it was under no duty to maintain bridge railings "which fall outside the traveled and paved portion of the roadbed actually designed for public vehicular travel." The Court of Claims denied summary disposition, concluding that guardrails are "designed to affect the way vehicles travel down the road." Invoking stare decisis and explaining that it was bound to "follow" our holding in *Scheurman,* the Court of Appeals reversed in a per curiam opinion.[3] Specifically, the Court of Appeals concluded that because the bridge railing "was neither 'roadbed' nor 'designed for vehicular travel,' governmental immunity applies and defendant should not be held liable for plaintiff's injuries" (citing *Scheurman*).

II

A

As a general rule, governmental agencies are immune from tort liability for actions taken in furtherance of a governmental function. MCL 691.1407; MSA 3.996(107). The Legislature has articulated limited exceptions to this general rule, including the highway exception, which mandates

[3] 198 Mich App 728; 499 NW2d 29 (1993), lv gtd 444 Mich 900 (1993).

that a governmental agency having jurisdiction over any highway

> shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. [MCL 691.1402(1); MSA 3.996(102)(1).]

Notably, for activities undertaken to fulfill this mandate, both the government's duty and its liability are limited to that "improved portion of the highway designed for vehicular travel." It is this limiting language which we interpret and apply in the instant case.

As this Court explained in *Ross v Consumers Power (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), the statutory grant of governmental immunity is broad, and its exceptions are narrowly drawn. We are mindful, however, that like all judicial interpretations of statutory provisions, this Court is bound by the well-established rule that our primary goal is to give effect to the controlling intent of the Legislature. *Lorencz v Ford Motor Co,* 439 Mich 370; 483 NW2d 844 (1992). Accordingly, while we address our efforts in the shadow of a narrowly drawn statutory exception, our analysis inextricably proceeds toward the light of legislative intent.

The legislative purpose for the highway exception is, we believe, a clear one: to enhance the safety of public travel upon state-owned highways. This interpretation of the highway exception was first articulated in *Roy v Dep't of Transportation,* 428 Mich 330, 341; 408 NW2d 783 (1987), and was most recently reaffirmed in *Gregg v Dep't of State Hwys,* 435 Mich 307, 316; 458 NW2d 619 (1990). We expressly reiterate and adopt it today.

As was first explained in *Roy,* the legislative purpose underlying the highway exception is ful-

filled by requiring certain governmental agencies to "repair and maintain the highway so that the improved portion designed for vehicular travel is reasonably safe and convenient for public travel." *Roy, supra* at 341. Although this duty to "repair and maintain" is a limited one—extending only to that "improved portion of the highway designed for vehicular travel"—within this conceptual boundary the statutory goal of maintaining safe highways is clear and unambiguous. Because we are obligated to give effect to the controlling legislative intent of this exception, it is against the backdrop of this statutory purpose that we today interpret and apply the limiting language of MCL 691.1402; MSA 3.996(102).

## B

### 1. *ROY v DEP'T OF TRANSPORTATION*

The highway exception, and its limiting language, was first examined by this Court in *Roy.* There we held that a bicycle path adjacent to, but separate and detached from, a highway was not part of the improved portion of that highway designed for vehicular travel. *Id.* at 340. In reaching this conclusion, we focused primarily on the *location* of the allegedly defective installation. Specifically, we explained that "the [highway exception] does not offer general protection to pedestrians or motorists without regard to *location,*" and that "[t]he criterion used by the Legislature was not based on the class of travelers, *but the road on which they travel.*" *Id.* at 341 (emphasis added). Because the bicycle path in *Roy* was located beyond the improved portion designed for vehicular travel, we concluded that governmental immunity from suit was not abrogated by the highway exception.

## 2. *SCHEURMAN v DEP'T OF TRANSPORTATION*

The location of allegedly defective installations was again emphasized by this Court in *Scheurman.* There we held that the failure to install lighting along a state trunk line did not subject the government to potential liability because "the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular travel." *Id.* at 633.[4] Notably, while four justices in *Scheurman* joined in the rationale and result of the lead opinion, only three justices expressly subscribed to its holding that the limiting language of MCL 691.1402; MSA 3.996(102) "refers only to the traveled portion, paved or unpaved, of the roadbed actually designed for vehicular travel." *Id.* at 623.[5] Conversely, four justices specifically expressed their desire for an interpretation of the limiting language that would include installations—even those located outside the improved portion of a highway designed for vehicular travel—that integrally affected safe travel on the improved portion.[6]

[4] Similarly, in a companion case decided with *Scheurman,* this Court held that a hedge growing on private property that obstructed the view of highway travelers "cannot be categorized as a defective condition upon 'the improved portion of the highway designed for vehicular travel . . . .'" *Id.* at 635. Accordingly, it concluded that liability could not be imposed, per the highway exception, upon the defendant road commission because of the hedge.

[5] Chief Justice RILEY authored, and Justices GRIFFIN and CAVANAGH joined, the plurality opinion in *Scheurman.*

[6] Specifically, three dissenting justices concluded that the plurality opinion, by limiting liability to the traveled or paved portion of a roadbed actually designed for vehicular travel, "negate[d] the fundamental legislative purpose underlying the highway exception to immunity": "a clear legislative purpose and policy to compensate persons injured because of a governmental agency's failure to maintain highways in a condition safe for public travel." *Id.* at 640 (BRICKLEY, J., dissenting, joined by Justices LEVIN and ARCHER); see also *id.* at 648 (the dissent's argument that the majority holding "seriously undermines the legislative mandate of § 2 to maintain safe high-

We interpret *Scheurman* as reiterating the general rule, first articulated by this Court in *Roy,* that the highway exception does not normally include installations physically separate and detached from the paved or traveled portion of a highway. As is explained below, this interpretation is consistent with *Gregg, supra,* this Court's most recent majority interpretation of the highway exception. This interpretation of *Scheurman* is also consistent with the position we take in the instant case.

### 3. *GREGG v DEP'T OF STATE HWYS*

In *Gregg, supra,* a majority of this Court again affirmed that location is a key determinant for properly defining and applying the highway exception. There we held that a bicycle path running between the traveled portion of a highway and its paved shoulder comprised part of the improved highway "designed for vehicular travel." In reaching this conclusion, we explained that highway shoulders, while not part of the normally traveled roadbed, were nevertheless intended and designed

---

ways"). The dissenting justices would have held that

the "improved portion" language of [MCL 691.1402; MSA 3.996(102)] does not distinguish the surface of the highway as opposed to conditions other than the surface of the highway which may well foreclose the highway from being "reasonably safe." [*Id.* at 641.]

Additionally, while concurring in both the rationale and result of the lead opinion, Justice BOYLE also indicated a preference for interpreting the limiting language to include installations "integral to" safe passage along the improved portion of a highway. Specifically, Justice BOYLE expressly concurred in the lead opinion:

[W]ith the understanding that it does not preclude the application of MCL 691.1402; MSA 3.996(102) in cases alleging a failure to "repair and maintain" installations that are integral to, if not part of, the "improved portion of the highway designed for vehicular travel," such as traffic lights and signs. [*Id.* at 637.]

for vehicular travel. *Id.* at 314, citing *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971). We held that the highway exception must be tempered by common experience, and that certain installations located beyond the traveled or paved roadway "are essential to a safe modern highway" so as not to be excluded from the highway exception. *Id.* at 315. This interpretation of the highway exception, we concluded, was more consistent with the exception's express purpose of protecting vehicular travelers by mandating the safe repair and maintenance of highways. *Id.* at 316.

C

The rule that can be derived from these decisions is clear, and we confirm it today: The limiting language of MCL 691.1402; MSA 3.996(102), creating liability only for "the improved portion of a highway designed for vehicular travel," encompasses (1) installations physically located within that traveled or paved portion of a highway designed for vehicular travel, or (2) some installations, even those physically located beyond the traveled or paved portion of a highway, that directly and integrally affect safe vehicular travel on this improved portion.

This conclusion is consistent with our prior interpretations of the highway exception articulated in *Roy* and *Gregg, supra.* Furthermore, this conclusion incorporates the position, advocated by a majority of the justices in *Scheurman,* that the highway exception should not preclude potential governmental liability in "cases alleging a failure to 'repair and maintain' installations that are integral to, if not part of, the 'improved portion of the highway designed for vehicular travel,' such as traffic lights and signs." *Id.* at 637 (opinion of

BOYLE, J., and dissenting opinion of BRICKLEY, J., joined by LEVIN and ARCHER, JJ.).

More importantly, this interpretation of the highway exception is consistent with the overriding legislative intent that guides our inquiry today, namely, the assurance of safe, reliable highways to protect public vehicular travel. As we recognized in *Roy* and *Gregg*, this intent is manifestly evident from the plain language of MCL 691.1402; MSA 3.996(102), which commands highway authorities to repair and maintain highways for safe public travel.

Defendant asks us to adopt an interpretation of the highway exception that would limit liability exclusively to alleged defects arising on "part of the physical structure of the roadbed" or "relat-[ing] to conditions arising out of the roadbed." While we conclude in this case that a physical installation off the improved portion does not escape immunity, in view of the expressions of a majority of this Court in the above-referenced opinions, we respectfully decline defendant's request for such a limited interpretation of the highway exception. Even the most minimalist assurances of vehicular safety demand more than simply decreeing that potholes be repaired, and proper striping applied, to those state-owned highways so greatly relied upon by both citizens and guests of this state. We do not interpret the limiting language of MCL 691.1402; MSA 3.996(102) in a manner so clearly inconsistent with, and damaging to, the highway exception's clear and overriding legislative mandate demanding safe highways.

Nevertheless, it must be emphasized that the scope of liability under the highway exception is *not* all-encompassing. Indeed, potential liability is expressly limited to that "improved portion of a

highway designed for vehicular travel." MCL
691.1402; MSA 3.996(102). This limiting phrase, of
course, necessarily defines the scope of duties and
liabilities sanctioned by the highway exception. In
this respect, the restrictive phrase is a spatial
limitation: all duties, and all liabilities, must accomplish the purpose of promoting safe vehicular
travel *on the improved portion.*

To summarize: in light of the clear legislative
purpose that we must uphold, we interpret the
limiting language of the highway exception as
including only installations physically located on,
or deemed to integrally affect, those properties
comprising "the improved portion of a highway
designed for vehicular travel." This interpretation
adequately fulfills the legislative goals of the provision, while recognizing that it is also a narrowly
defined exception to a broad grant of immunity.

III

Turning now to the facts of this instant case we
conclude, albeit for different reasons, that the
Court of Appeals did not err in reversing the
Court of Claims denial of defendant's motion for
summary disposition. Accordingly, we affirm the
decision of the Court of Appeals.

The Court of Appeals read our decision in
*Scheurman* as having interpreted the statutory
phrase "improved portion of the highway designed
for vehicular travel" to encompass *only* "the traveled portion of a roadbed actually designed for
public vehicular travel." *Chaney, supra* at 730. We
note that this narrow reading does not comport
with our interpretation of the limiting language.
Rather, and as explained above, we have interpreted this statutory phrase as including installations physically located within that traveled or

paved portion of a *highway* designed for vehicular travel (including that "traveled portion of a roadbed actually designed for public vehicular travel"), as well as, in some narrowly defined circumstances, installations located beyond this improved portion that directly and integrally affect safe vehicular travel on the highway.

Applying this interpretation of the limiting language, we conclude that governmental immunity precludes liability for the bridge railing at issue in this instant case. First, it is clear that this bridge railing—lying outside both the curb and the shoulder of the highway—is not physically located within that improved portion of the highway designed for vehicular travel. Unlike the bicycle path in *Gregg,* this bridge railing is not part of the highway shoulder. Rather, like the bike path in *Roy,* this bridge railing is physically separate and "detached" from the improved portion of this highway.

Second, the bridge railing does not directly and integrally affect vehicular travel along the improved portion of this highway. Neither a guardrail nor a concrete abutment, located beyond the shoulder of a highway, has any effect upon the safe and convenient passage of vehicles while on the improved portion. In this respect, the bridge railing here is markedly different from the traffic lights and signs alluded to by Justice BOYLE in *Scheurman, supra.* Traffic signals and signs are purposely designed to directly affect the flow of vehicular traffic on the improved portion of a highway. If these installations fail, traffic *on the improved portion of a highway* is directly and integrally affected: the likelihood of accidents increases, as does the related probability of injury to vehicular passengers.

In contrast, a guardrail or concrete abutment

permanently located beyond the shoulder of a highway simply cannot cause an accident that originates on the improved portion of a highway. Indeed, the sole purpose and effect of the bridge railing here—i.e., to prevent vehicles from accidentally leaving the highway—is *only* implicated *after* a vehicle has left the improved portion. Accordingly, barriers such as guardrails and concrete abutments are not directly and integrally related to safe travel along the highway—the barrier is simply not necessary for safe vehicular travel on and along the improved portion.

## IV

Because the bridge railing at issue here was not physically located within the improved portion of a highway designed for vehicular travel, and because it did not directly and integrally affect safe vehicular travel on the improved portion of the highway, we conclude that the highway exception is inapplicable and that governmental immunity is available to defendant. Accordingly, we affirm the decision of the Court of Appeals.[7]

[7] Because I stand alone on my position concerning the highway exception to governmental immunity, and thus have contributed to this Court's badly fractured view of what the Legislature has divined in its effort to provide this exception, I wish to offer—for whatever value it might be to the bench and bar—my individual view of where I think the fracture lines are formed.

There are, in my view, three basic positions represented by the various opinions in this and previous cases. The first viewpoint is that because the state's liability is limited to the "improved portion of the highway designed for vehicular travel," and because the plain meaning of this statutory language can only be interpreted to encompass the roadbed on which vehicles travel, only those accidents that are caused by a condition directly on this roadbed qualify for the exception to immunity. *Post* at 168, RILEY, J. *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990).

Another viewpoint, represented by Justice LEVIN's writings, is that any accident that results from the use of the improved portion of the highway, whether or not it occurs thereon or is caused by a condition thereon, is subject to potential liability. *Post* at 196-198, LEVIN, J.

Riley, J. (*concurring in part and dissenting in part*). While I agree that the state is immune from liability in the instant case, because I find that it may not be liable for damages arising from installations directly and integrally affecting vehicular safety on the improved portion of the highway unless the highway is unreasonably unsafe because of physical disrepair of the improved portion of the roadbed designed for vehicular travel, I write separately.

I

At issue in the instant case is whether defendant may be held liable for injuries to a motorcyclist that allegedly occurred because of defendant's failure to properly design, construct, and maintain a bridge railing. The majority holds that defendant is immune from liability from such allegations because bridge railings are neither installations physically located within the traveled or paved portion of the highway designed for vehicular travel nor installations directly and integrally affecting the vehicular safety on the improved portion of the highway. *Ante* at 161. While I concur with this result, the majority impermissi-

---

I distinguish my position from the foregoing views in that I read the statute as creating liability for an accident that occurs on the improved portion of the highway caused by a condition that affects that improved portion, regardless of the ultimate location of that cause. Hence, this and my prior decisions allow for recovery when, and only when, the occurrence is on the improved portion and is caused by a condition directly affecting vehicular travel on the improved portion, even though that condition may have been occasioned by an act or an omission outside the improved portion of the highway.

As expressed herein, it is my view that this latter interpretation best captures the essence of a statute that provides liability for mishaps occurring on the improved portion of the highway, but which does so without any direct reference to the location of their causality. This interpretation also protects the stated purpose of the statute to avoid liability for accidents that occur outside the improved portion of the highway, regardless of their cause.

bly expands liability by misconstruing the plain meaning of the statute at issue.

A

The State of Michigan and its subdivisions are not insurers of passengers on Michigan public highways. *Salvati v Dep't of State Hwys,* 415 Mich 708, 716; 405 NW2d 850 (1982) (COLEMAN, J.). The culmination of nearly a century of legislative reform,[1] MCL 691.1402; MSA 3.996(102) crafts a narrow exception to the general common-law principle that the government is immune for injuries arising from the use of public highways:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property for reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any

[1] At common law, local governments were immune from suits arising from the negligent upkeep of highways. *Nile Twp Hwys Comm'rs v Martin,* 4 Mich 557 (1857). With the passage of 1879 PA 244, 1 How Stat 1442, however, the Legislature provided for broad liability for bodily injury arising from the negligent upkeep of public highways, bridges, crosswalks, and culverts. 1887 PA 264, 3 How Stat 1446c, expanded liability to include sidewalks. Liability remained essentially the same until 1964 PA 170 restored governmental immunity in some areas and expanded it in others; the act also provided greater uniformity. For a thorough history of sovereign immunity with regard to public highways, see *Roy v Dep't of Transportation,* 428 Mich 330, 336-338; 408 NW2d 783 (1987).

other installation outside of the improved portion of the highway designed for vehicular travel.

This Court has long held that the fundamental purpose of statutory construction is to determine the intention of the Legislature in enacting the statute. *Leoni Twp v Taylor,* 20 Mich 148, 154-155 (1870). Because the Legislature is presumed to understand the meaning of the language it places into law, "[s]tatutory analysis necessarily begins with the wording of the statute itself." *Carr v General Motors Corp,* 425 Mich 313, 317; 389 NW2d 686 (1986). Hence, each word of an act is "presumed to be made use of for some purpose," and "so far as possible, effect must be given to every clause and sentence." *Univ of Michigan Bd of Regents v Auditor General,* 167 Mich 444, 450; 132 NW 1037 (1911). Accordingly, the Court may not substitute or redefine a word, *People v Crucible Steel Co of America,* 150 Mich 563, 567; 114 NW 350 (1907), or assume that the Legislature mistakenly utilized one word or phrase instead of another. *Detroit v Redford Twp,* 253 Mich 453, 456; 235 NW 217 (1931). Thus, "[a] fundamental principle guiding this Court is that a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Coleman v Gurwin,* 443 Mich 59, 65; 503 NW2d 435 (1993).[2] In other words, "[a] statute is not open to construction as a matter of course, but only where the language used in the statute requires interpretation—where it is ambiguous or where 2 or more constructions can be placed upon it, where it is of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its

---

[2] As Justice COOLEY explained, "the courts have nothing to do but to obey" a clear statute. *People ex rel Twitchell v Blodgett,* 13 Mich 127, 167 (1865).

meaning." *Lansing v Lansing Twp,* 356 Mich 641, 649; 97 NW2d 804 (1959). These rules of statutory construction are especially appropriate in the instant case because, historically, Michigan has strictly construed statutes imposing liability on the state in derogation of the common-law rule of sovereign immunity. See, e.g., *Detroit v Putnam,* 45 Mich 263, 265; 7 NW 815 (1881); *Johnson v Ontonagon Co Bd of Co Rd Comm'rs,* 253 Mich 465, 468; 235 NW 221 (1931).

B

The majority finds that the statute permits liability when injuries arise from "(1) installations physically located within that traveled or paved portion of a highway designed for vehicular travel, or (2) some installations, even those physically located beyond the traveled or paved portion of a highway, that directly and integrally affect safe vehicular travel on this improved portion." *Ante* at 158. The majority reasons that such an interpretation of the statute is consistent with both precedent and the legislative intent of the statute. *Id.*

Contrary to the conclusion of the majority, the clear and unambiguous language of the statute imposes liability only when the physical highway is unreasonably unsafe because of physical disrepair of the improved portion of the road designed for vehicular travel. The language is not so doubtful or obscure that reasonable minds need to search behind its words to find its meaning. This Court has explained:

   [T]he duty imposed by the statute upon the state and county road commissions is restricted to the "improved portion of the highway designed for

vehicular travel . . . ." In *Roy* [*v Dep't of Trans-portation,* 428 Mich 330, 339; 408 NW2d 783 (1987)], we observed that the limited scope of the term "highway" found in § 2 parallels the common understanding of the word. We are in accord with the conclusion reached in *Roy.* Therefore, we hold today that the phrase "improved portion of the highway designed for vehicular travel" refers only to the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel. *Roy, supra.*

The purpose of the highway exception is not to place upon the state or counties an unrealistic duty to ensure that travel upon the highways will always be safe. Looking to the language of the statute, we discern that the true intent of the Legislature is to impose a duty to keep the physical portion of the traveled roadbed in reasonable repair. [*Scheurman v Dep't of Transportation,* 434 Mich 619, 630-631; 456 NW2d 66 (1990).]

Hence, "compliance with the conditions and restrictions of the highway exception statute negates the inclusion of street lighting within the duty of the state because the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular travel." *Id.* at 633. Similarly, a county is not liable for obstructions of the highway caused by private hedges because it lacks any "connection to the traveled portion of the roadbed designed for public vehicular traffic." *Id.* at 636.[3]

The plain language of the statute, therefore, simply does not permit liability for injuries arising from a bridge railing. A bridge railing is not an "improved portion of the highway designed for

---

[3] Similarly, the Court has rejected the imposition of liability for bicycle paths that are detached from, but parallel to, the traveled portion of the highway, *Roy, supra* at 331, while imposing liability for such paths that are part of the paved portion of the highway. *Gregg v Dep't of State Hwys,* 435 Mich 307, 316; 458 NW2d 619 (1990).

vehicular travel." While a bridge railing is de-
signed for vehicular safety, it is not a portion of
the highway on which motor vehicles were de-
signed to travel. Nor does the statute expressly
impose liability for bridge railings. To the con-
trary, the bridge railings, separated from the road-
bed by a raised curb and a paved shoulder, are
akin to "sidewalks, crosswalks, or any other instal-
lation outside the improved portion of the
highway . . . ." Generally, bridge railings, not un-
like lighting or vegetation, exist outside the im-
proved portion of the highway designed for vehicu-
lar travel and are not a part of the roadbed. Nor
are there allegations that this particular bridge
railing posed a danger to those traveling on the
improved portion of the highway. Thus, the unam-
biguous language of the statute excludes injuries
arising from the bridge railing.[4]

---

[4] Justice Levin, however, finds:

> In providing, in the fourth sentence of the highway excep-
> tion, that the duty "to repair and maintain highways, and the
> liability therefor" shall not extend to "any other installation
> outside of the improved portion of the highway designed for
> vehicular travel," the Legislature did not relieve the MDOT of
> its duty, and liability therefor, under the first two sentences of
> the highway exception, to repair and maintain the improved
> portion of the highway designed for vehicular travel in condi-
> tion reasonably safe and fit for travel, including installation of
> guardrails reasonably necessary to maintain the improved
> portion reasonably safe and fit for travel. [*Post* at 193-194.]

Yet, Justice Levin's conclusion that the first and second sentences
of the provision impose duties and liabilities for damages beyond the
"improved portion of the highway designed for vehicular travel" is
belied by the language of the statute. While the first two sentences of
the statute impose general duties and liability on defendant to "main-
tain the highway in reasonable repair," the fourth sentence explicitly
limits such liability "to the improved portion of the highway designed
for vehicular travel" and exempts from liability "sidewalks, cross-
walks, or any other installation outside of the improved portion of the
highway designed for vehicular travel." While Justice Levin repeat-
edly criticizes members of the Court for ignoring statutory language
and for so-called "myopic" interpretations of the statute at issue, his

In *Scheurman, supra* at 632, the Court noted that necessity of lighting for safety purposes was not the issue before it, but whether lighting was an improved portion of the highway designed for vehicular travel. Similarly, contrary to the conclusion of the majority, the issue in the instant case is not whether bridge railings are necessary for safety, but whether an exception to common-law immunity has been provided for accidents arising from the failure to properly design, maintain, and repair such installations. The majority, however, ignores the narrow issue presented and expands the sovereign immunity exception to include all injuries arising from any installation that "directly and integrally affect[s] safe vehicular travel on" the improved portion of the highway in contradiction of the clear language of the statute. *Ante* at 158. While the obvious purpose undergirding the section is to compensate injured persons when the highway is unsafe for vehicular travel, it does so only in very limited circumstances. The statute does not provide blanket liability for all injuries that deprive drivers of conditions essential to safety on the highway itself. The statute only provides for liability if the injuries arise from the failure to repair or maintain the improved portion of the highway designed for vehicular travel.[5] The majority attempts to reconcile this holding with precedent and legislative intent, but ignores the proper focus of the inquiry: the plain language of the statute.

Furthermore, the holding is inconsistent with *Scheurman.* The majority explains that liability may arise from those installations "deemed to integrally affect, those properties comprising 'the improved portion of a highway designed for vehi-

interpretation blatantly misconstrues the statute by making meaningless the fourth sentence of the provision.

[5] Thus, injuries arising from crumbling roads or collapsing bridges, for instance, are clearly compensable.

cular travel.'" *Ante* at 160. Thus, installations beyond the roadbed, but which affect traffic on it, may give rise to liability. This Court, however, has rejected liability arising from blocked vision caused by overhanging hedges or inadequate lighting, both of which are located outside the roadbed, but which also affect traffic *on* the roadbed. *Id.* In effect, the majority overrules *Scheurman* because hedges and lighting that block drivers' vision certainly affect safety on the highway. Indeed, adequate lighting and unobstructed views are more essential to the proper and safe flow of traffic because bridge railings, as the majority notes, have no "effect upon the safe and convenient passage of vehicles while on the improved portion." *Ante* at 161.

The majority's holding appears to be based on the conclusion that the Legislature could not have been so unwise as to have intended a result inconsistent with the majority's. Yet, the wisdom, fairness, or incongruity of the statute is not our concern. The judiciary may not amend statutes to conform with its policy preferences. The Legislature, not the Court, is the lawmaking authority within our constitutional order of separate powers. Unless the constitution invalidates a legislative enactment, the propriety and wisdom of such enactments are not for this Court to question. Unwise legislative enactments must be rectified by the democratic safeguards and checks in the constitution: ballot box,[6] initiative,[7] referendum,[8] or

---

[6] Art 2, § 8 ("Laws shall be enacted to provide for the recall of all elective officers except judges of courts of record"); art 4, § 2 (senators are to be elected every four years); art 4, § 3 (representatives are to be elected every two years); art 5, § 21 (the Governor is to be elected every four years).

[7] Art 2, § 9 ("The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative").

[8] *Id.* ("The people reserve to themselves . . . the power to approve or reject laws enacted by the legislature, called the referendum").

constitutional amendment.[9] Finding itself wiser than the Legislature and the people, the majority reaches beyond the plain language of the act and crafts a new statute reflective of its sensibilities. Because this is not our role in the constitutional order, I concur solely with the result reached by the majority.

GRIFFIN, J., concurred with RILEY, J.

BOYLE, J. (*concurring*). I agree with Justice BRICKLEY's conclusion that the defendant is immune from liability for accidents that are allegedly caused by its failure to properly repair, maintain, or construct concrete bridge abutments or guardrails that are beyond the shoulder of a state trunk line. I write separately because I do not agree that the highway exception encompasses accidents arising out of any installation that "directly and integrally affect[s] safe vehicular travel on this improved portion." *Ante* at 158.

By statute, governmental agencies are immune from tort liability while engaging in a governmental function, except activities that fall within one of the narrowly drawn exceptions. See MCL 691.1407; MSA 3.996(107); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984). The outcome of this case hinges on the highway exception found in MCL 691.1402(1); MSA 3.996(102)(1).[1]

Under the highway exception, the state's duty to

---

[9] Art 12, §§ 1-3 (outlining three methods to amend the state constitution).

[1]   Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his or her property by

maintain and repair the highway and its liability
for failure to do so are restricted to the "improved
portion of the highway designed for vehicular
travel":[2]

> The duty of the state and county road commis-
> sions to repair and maintain highways, and the
> liability therefor, shall extend only to the im-
> proved portion of the highway designed for vehicu-
> lar travel and shall not include sidewalks, cross-
> walks, or any other installation outside of the
> improved portion of the highway designed for vehic-
> ular travel. [MCL 691.1402(1); MSA 3.996(102)(1).]

The difficulty is that the phrase "improved por-
tion of the highway designed for vehicular travel"
draws no obvious line. We know, because the
statute tells us, that it does not include sidewalks
and crosswalks, which are for pedestrian travel.

reason of failure of any governmental agency to keep any
highway under its jurisdiction in reasonable repair, and in
condition reasonably safe and fit for travel, may recover the
damages suffered by him or her from the governmental agency.
The liability, procedure and remedy as to county roads under
the jurisdiction of a county road commission shall be as pro-
vided in section 21 of chapter IV of Act No. 283 of the Public
Acts of 1909, as amended, being section 224.21 of the Michigan
Compiled Laws. The duty of the state and county road commis-
sions to repair and maintain highways, and the liability there-
for, shall extend only to the improved portion of the highway
designed for vehicular travel and shall not include sidewalks,
crosswalks, or any other installation outside of the improved
portion of the highway designed for vehicular travel. No action
shall be brought against the state under this section except for
injury or loss suffered on or after July 1, 1965. Any judgment
against the state based on a claim arising under this section
from acts or omissions of the state transportation department
shall be payable only from restricted funds appropriated to the
state transportation department or funds provided by its in-
surer.

[2] The duty to maintain and repair sidewalks and crosswalks falls on
local governments, including cities, villages, and townships. See *Ma-
son v Wayne Co Bd of Comm'rs*, 447 Mich 130, 136, n 6; 523 NW2d
791 (1994).

However, the contrast between the improved portion and "any other installation outside of the improved portion" is not helpful because, in this context, the word "outside" does not seem to denote a spatial relationship. "Crosswalks," one example of an "installation outside of the improved portion," are not physically outside the highway, but are instead part of the pavement[3] and are shared with vehicular traffic.

It seems to be generally agreed that the improved portion includes the paved surface as well as bicycle paths that are part of the paved portion. See *Gregg v Dep't of State Hwys,* 435 Mich 307, 316; 458 NW2d 619 (1990). On the other hand, it does not include bicycle paths that are detached from, but parallel to, the traveled portion of the roadway. *Roy v Dep't of Transportation,* 428 Mich 330, 331; 408 NW2d 783 (1987).

It also seems to be agreed that, as a general rule, the "improved portion of the highway designed for vehicular travel" does not include installations outside the edges of the roadway. The limiting sentence was the subject of this Court's decision in *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990).[4] In that case, we held that governmental agencies are immune

[3] See *Mason,* n 2 *supra,* p 136, n 5.

[4] In *Scheurman,* the plaintiff's decedent was killed attempting to cross Eight Mile Road in the City of Detroit after dark. The plaintiff sued the Department of Transportation, alleging negligence on the ground that it had failed to keep the road in a condition safe and fit for public travel. More specifically, it had not installed streetlights on that portion of Eight Mile Road.

In a companion case, *Prokop v Wayne Co Bd of Rd Comm'rs,* the plaintiff sued the Wayne County Road Commission on the grounds that it had failed to keep the road reasonably safe for travel because it failed to trim or remove a hedge that grew on private property. The plaintiff had been riding her bicycle westbound on Schoolcraft Road toward the intersection with Columbia Street. The traffic light turned green, and she proceeded into the intersection. At the same time, a van traveling northbound on Columbia Street approached the intersection. It was a T-type intersection that forced him to turn. As the

from liability for failing to install lighting next to a freeway because "the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular travel." *Id.* at 633. In a companion case, we held that a hedge growing on private property that allegedly interfered with a driver's vision was not part of the improved portion of the highway. *Id.* at 635.

I cannot agree, however, with Justice BRICKLEY's statement that the highway exception includes "some installations, even those physically located beyond the traveled or paved portion of a highway, that directly and integrally affect safe vehicular travel on this improved portion." *Ante* at 158. The test is less helpful than the statute itself. I am now persuaded that the test is so imprecise that it would foster litigation with no clear countervailing benefit. Governmental agencies attempting to avoid liability by fulfilling their duty cannot know with certainty what it is that they are required to do. Injured persons seeking advice regarding litigation could not be given reasonable evaluation of the parameters of the government's responsibility, and trial judges would be left without standards to determine the question of the scope of the duty to maintain. In the end, the phrase would mean that governmental agencies will be liable whenever this Court, at the end of a long and expensive road of appellate litigation, deems it reasonable.

Although the language of the statute is far from clear, I think the best course for this Court is clear. We should reaffirm the precedents of this Court that construed the exception after its adop-

van began to turn east on Schoolcraft, it struck the plaintiff. The driver claimed that he, too, had the green light. The visibility of both drivers, however, had been obstructed by a six-foot hedge growing on the southeast corner of the intersection.

tion and say that the state (and counties) may be liable under the highway exception only when it fails to repair and maintain[5] the paved surface of the roadway, including objects on and structures supporting that surface, or traffic signs or traffic signals necessary for safe vehicular travel.

Of course, given this clarification, it will not follow that all variations of the above-listed defects will come within the exception. Because the issue is not squarely presented in the case before us, we cannot say with certainty that there can be any liability for given signs and signals.[6] However, traffic signs and traffic signals in general are improvements that are designed for vehicular travel, as opposed to pedestrian traffic, and are essential to safe and efficient vehicular travel. Moreover, there is textual support for the conclusion that governmental agencies may be liable for failing to repair or maintain signs and signals. By the early eighties, it was established that "the duty to maintain a highway in reasonable repair encompasses the maintenance of traffic signs." *Salvati v Dep't of State Hwys*, 415 Mich 708, 715; 330 NW2d 64 (1982).[7] In 1986, the Legislature narrowed liability

[5] We have held that this duty includes the duty to repair defects in design or construction. See *Peters v Dep't of State Hwys*, 400 Mich 50; 252 NW2d 799 (1977).

[6] In this regard, see *Mason*, n 2 *supra*, holding that governmental agencies cannot be liable for failing to install signs that do not warn of danger to vehicular traffic.

[7] In *Salvati*, Justice COLEMAN, joined by Chief Justice FITZGERALD and Justice RYAN, summarized the duty as follows:

A governing unit may incur liability under the broad concept of "traffic sign maintenance" in the following ways: for failing to properly maintain a sign placed on the roadway, *O'Hare v Detroit*, 362 Mich 19; 106 NW2d 538 (1960); for failing to erect any sign or warning device at a point of hazard, *Bonneville v Alpena*, 158 Mich 279; 122 NW 618 (1909); *Mullins v Wayne County*, 16 Mich App 365; 168 NW2d 246 (1969); for positioning an improper system of signs on the roadway, *National Bank of Detroit v Dep't of State Highways*, 51 Mich App 415; 215 NW2d

under the highway exception by excluding trees
and utility poles from the definition of "highway"
as that term is used in the highway exception.
MCL 691.1401(e); MSA 3.996(101)(e). Before the
amendment, this section had stated merely that
"[t]he term 'highway' shall not be deemed to in-
clude alleys."[8] Because, at that time, governmental
units could be liable for failing to repair and
maintain traffic lights and signs, and because the
Legislature restricted liability without mentioning
signs and traffic lights, it is reasonable to infer[9]
that it intended that governmental units should be
liable for failing to repair and maintain signs and
signals.

In this case, I would affirm the decision of the
Court of Appeals. The plaintiff's claim is barred
by governmental immunity because he does not

---

599 (1974); or for placing a sign which inadequately informs
approaching motorists of a hazard, *Lynes v St Joseph County
Road Comm,* 29 Mich App 51; 185 NW2d 111 (1970). While the
highway authority has discretion in the erection of traffic
control signs, MCL 257.608; MSA 9.2308, this discretion may
not be capitalized upon to shield the authority from liability for
highway defects, see *Mullins, supra,* 381, nor should compliance
with standard manual specifications similarly act wholly to
absolve the highway authority from liability. However, *Na-
tional Bank of Detroit, supra,* suggests that compliance with
traffic manual standards is a factor to consider in determining
the reasonableness of the state's actions at the time of the
accident. [415 Mich 715.]

Justice LEVIN, joined by Justices KAVANAGH and WILLIAMS, would
have found a duty at least as expansive. See *id.* at 721.

[8] Cf. *Dettloff v Royal Oak,* 178 Mich App 319; 443 NW2d 410 (1989)
(affirming dismissal of the case on the ground of governmental immu-
nity where the plaintiff alleged that she had slipped and fallen in an
alley).

[9] We concede that the inference is, at best, approximate. The
Legislature's failure to exclude signs or lights from the definition of a
highway does not necessarily show that it intended to include them.
The necessary votes may not have been available for either proposal.
Cognizant of the difficulties presented by the limited information
available to us, we remain convinced that this is the most reasonable
interpretation of what occurred.

allege a failure to repair and maintain the paved surface of the roadway or a traffic sign or signal.

CAVANAGH, C.J. (*concurring*). I agree that the defendant is immune from liability. In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 596; 363 NW2d 641 (1984), this Court sought "to create a cohesive, uniform, and workable set of rules which . . . readily define the injured party's rights and the governmental agency's liability." It was against this backdrop and our goal of remaining "faithful to the statutory language and legislative intent" of the government tort liability act[1] that this Court recognized broad governmental immunity with narrowly drawn exceptions.[2] Because Justice RILEY's offering remains faithful to these premises, I reluctantly join her opinion.

Admittedly, Justice RILEY's plain interpretation of the highway exception results in harsh consequences. Her interpretation, however, is defensible because it is in accord with the plain language of the statute[3] and *Ross'* command of broad governmental immunity with narrowly drawn exceptions. Furthermore, Justice RILEY's interpretation provides an exact standard, defining not only an injured party's rights but the government's poten-

[1] MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*

[2] See also *Johnson v Ontonagon Co Bd of Co Rd Comm'rs*, 253 Mich 465, 468; 235 NW 221 (1931) (statutes imposing liability in derogation of the common law are to be strictly construed).

[3] The statute explicitly states the duty and liability of the responsible government agencies:

> The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [MCL 691.1402(1); MSA 3.996(102)(1).]

tial liability. None of the other separate opinions satisfies each of these components.

Although I find Justices BRICKLEY's and BOYLE's interpretations preferable from a policy standpoint, I cannot in good conscience join either opinion. Justice BRICKLEY's interpretation does not provide a standard with which to guide both the bench and bar. The test is vulnerable to endless interpretation, encouraging recurrent appellate litigation. Justice BOYLE's interpretation, while more limited in scope, is not supported by the statutory language or post-*Ross* case law.

Finally, Justice LEVIN's interpretation, while sympathetic to the plight of injured plaintiffs, effectively abrogates governmental immunity within the realm of highway transportation. While the Legislature obviously intended to except certain situations from the shield of governmental immunity, it certainly did not intend to provide limitless application of the highway exception.

I find it inconceivable that liability under the highway exception should be so severely limited, nevertheless for the reasons stated above, I am compelled to strictly construe the statute. The badly fractured opinions seen in this case and *Mason v Wayne Co Bd of Comm'rs,* 447 Mich 130; 523 NW2d 791 (1994), scream for legislative action. I urge the Legislature to provide a more exhaustive list of exclusions[4] or revise the statute, illustrating the extent of the highway exception.

LEVIN, J. (*dissenting*). Ray Chaney was operating his motorcycle on Michigan Avenue in Dearborn onto a two-lane entrance ramp leading to I-94. He

[4] The legal profession, government agencies, and potential plaintiffs would benefit greatly if the Legislature defined the term "other installation outside of the improved portion of the highway designed for vehicular travel." MCL 691.1402(1); MSA 3.996(102)(1).

claims that as he was moving to the right of the ramp he saw an automobile approaching from the rear, and that while attempting to straighten the motorcycle he hit the curb and concrete wall or metal guardrail.[1] He was catapulted over the ramp and landed next to a median barrier on I-94.[2]

The question presented is whether the Michigan Department of Transportation is relieved from liability under the highway exception to governmental immunity[3] from tort liability for a defect in

[1] Immediately beyond the paved roadway there is a paved curb and a narrow shoulder, and then a concrete wall where the ramp bridges the expressway. Immediately before and after the concrete wall is a metal railing.

[2] Chaney could not recall whether he struck the metal guardrail or the concrete wall. His motorcycle did not leave the ramp.

[3] The highway exception reads:

Each governmental agency having jurisdiction over any highway *shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel.* Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction *in reasonable repair, and in condition reasonably safe and fit for travel,* may recover the damages suffered by him from such governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. The *duty* of the state and the county road commissions to *repair and maintain* highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and *shall not include* sidewalks, crosswalks or *any other installation outside of the improved portion of the highway designed for vehicular travel.* No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or omissions of the state highway department shall be payable only from restricted funds appropriated to the state highway department or funds provided by its insurer. [1964 PA 170, § 2, MCL 691.1402; MSA 3.996(102). Emphasis added.]

The text of the portion of 1909 PA 283, concerning county liability, is set forth in n 55. 1948 CL 224.21 carries forward, without change, the operative language of the 1909 act:

design or construction of the concrete wall or guardrail because they were erected immediately beyond and thus "outside of the improved portion of the highway designed for vehicular travel."

The Court of Appeals, relying on *Scheurman v Dep't of Transportation,* 434 Mich 619; 456 NW2d 66 (1990), held that the circuit judge should have granted the MDOT's motion for summary disposition for two reasons: because *the Legislature intended to impose only a duty to keep "the traveled roadbed in reasonable repair,"* and also because "the *concrete wall,* while part of the overpass structure, was not designed for vehicular travel, but instead *constituted an 'other installation outside of the improved portion of the highway designed for vehicular travel'* [within the meaning of the 'any-other-installation' clause[4] of the highway exception set forth in n 3]. Because the barrier was neither 'roadbed' nor 'designed for vehicular travel,' *Scheurman, supra,* governmental immunity applies and defendant should not be held liable for plaintiff's injuries."[5]

## I

We would reverse the Court of Appeals and remand for trial.

### A

*Scheurman* is not precedentially binding under the doctrine of stare decisis.

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel.

[4] See text following n 48 and preceding n 49.
[5] 198 Mich App 728, 729-730; 499 NW2d 29 (1993).

Three justices signed the plurality opinion in *Scheurman.* A fourth justice joined in the "rationale and result" of the plurality opinion "with the understanding that it does not preclude the application" of the highway exception "in cases alleging a failure to 'repair and maintain' installations that are integral to, if not part of, the 'improved portion of the highway designed for vehicular travel,' such as traffic lights and signs."[6]

"Since neither opinion [in *Scheurman*] obtained four signatures, neither is binding under the doctrine of stare decisis." *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973).[7]

**B**

Even if four justices had unqualifiedly signed the plurality opinion in *Scheurman*—and we acknowledge in this connection that the concurring justice joined "in both the rationale and result" of the concurring opinion—the analysis and rationale of

---

[6] *Id.,* p 637. The concurring opinion concluded with: "See *ante,* p 637, n 29," thereby adverting to n 29 of the plurality opinion in which it was acknowledged that in *Tuttle v Dep't of State Hwys,* 397 Mich 44, 45-46; 243 NW2d 244 (1976), "this Court found the defendant liable for a newly opened intersection that 'was not "reasonably safe and fit for travel" by reason of inadequate signalization.' " The plurality opinion also there adverted to *Salvati v Dep't of State Hwys,* 415 Mich 708; 330 NW2d 64 (1982), and stated:

> [T]he plurality decision [in *Salvati*] indicates a willingness by the Court to include the duty to post and maintain traffic signs within the highway exception statute. Again [as in *Tuttle*], however, neither of the two opinions, nor any of the cited cases within them, address the issue whether traffic signs fall within the "improved portion of the highway designed for vehicular travel."
>
> Notwithstanding our decision today, we feel it is inappropriate to express an opinion as to the validity of *Tuttle* or *Salvati* at this time.

[7] See also *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976).

the plurality opinion does not govern disposition of this case.

"It has often been said by this and other courts that the language of a decision must be construed with reference to and confined to the facts of that case." *Wolcott v Holcomb,* 97 Mich 361, 368; 56 NW 837 (1893). Justice MARSTON's statement for the Court in *Larzelere v Starkweather,* 38 Mich 96, 100-101 (1878), is again in point:

> No such question was involved or decided in [the cited] case. Nor were the facts in that case such as would justify the court in coming to and announcing such a conclusion. Some expression may be found in the reasoning in the opinion delivered in that case, which taken alone might give color to such an idea. The reasoning in an opinion is not that of the court, but of the judge who prepares and delivers it. It may or may not be considered sound and unanswerable, and as such is the subject of criticism. *The conclusion arrived at and announced upon the several questions discussed and essential to a proper disposition of the case, is that of the court, and in concurring in such conclusions it is not generally supposed or understood that everything contained or said in the opinion is thereby unqualifiedly and unquestionably adopted as the opinion of the court.* In preparation of an opinion, the facts of the case are in mind. It is prepared with reference to such facts, and when considered in connection therewith, will generally be found satisfactory. When, however, an attempt is made to pick out particular parts or sentences, and apply them indiscriminately in other cases, nothing but confusion and disaster will be likely to follow. In other words, *the opinion and decision of a court must be read and examined as a whole in the light of the facts upon which it was based. They are the foundation of the entire structure which cannot with safety be used without reference to them.* [Emphasis added.]

The fundamental issues in *Chaney*—whether the MDOT is subject to liability for failure of design or construction of the concrete wall and metal barrier—and in its companion case, *Mason v Wayne Co Bd of Comm'rs,* 447 Mich 130; 523 NW2d 791 (1994)—whether Wayne County is subject to liability for failure to erect school warning signs—were not decided in *Scheurman.* Nor could they have been. Neither a barrier issue, such as is presented in *Chaney,* nor a warning issue, such as is presented in *Mason,* were present in *Scheurman* or in its companion case, *Prokop v Wayne Co Bd of Rd Comm'rs.*[8]

Further, the statement in the plurality opinion in *Scheurman* that the "true intent of the Legislature is to impose a duty to keep the physical portion of the traveled road in reasonable *repair*"[9] (emphasis added) is obiter dictum. *Scheurman* and *Prokop* could have been decided with either the first or the second "plain meaning"[10] of the highway exception put forth in the plurality opinion in *Scheurman.*[11]

We *all* agreed in *Scheurman* that the MDOT was not subject to liability for failure to install lighting on state highways. A majority in the companion case, *Prokop,* held that the county's obligation under the highway exception does not require it to

[8] Both *Scheurman* and *Prokop* were decided with one (plurality, concurring, and dissenting) opinion.

[9] *Id.,* p 631. This was the third "plain meaning" of the highway exception put forth in the plurality opinion in *Scheurman.* See ns 70-74.

[10] *Scheurman,* concerning street lighting, and *Prokop,* concerning trimming hedges at an intersection, involved installations that were not "part of the improved portion of the highway designed for vehicular travel" (the second "plain meaning," *Scheurman, supra,* p 623) or "the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel" (the first "plain meaning," *Scheurman, supra,* p 623). See ns 67-70 and accompanying text.

[11] See ns 70-74.

remove or trim hedges located on private property that obscure the line of vision at an intersection. A design or construction defect of the barrier in *Chaney* could have been corrected without intruding on private property. A warning sign could have been erected in *Mason* within the right of way.

The issues presented in *Chaney* and *Mason* thus do not require reconsideration of or overruling *Scheurman.*[12] Nor should *Scheurman* be overruled. If one focuses on what was decided in *Scheurman/ Prokop,* the results are defensible. The Legislature had indicated that the state is not required to provide nighttime lighting of state highways.[13] The question whether a county should be subject to liability for failure to remove obstructions on private property is close, and reasonable persons might differ regarding whether the duty and liability to keep roadways in condition reasonably safe and fit for travel requires such intervention.

The majority's response to the issues here presented, in contrast with its decisions on the issues actually presented in *Scheurman/Prokop,* has not been, and cannot be, defended.

---

[12] The author of *Scheurman* states that the formulation set forth in the concurring opinion "is inconsistent with *Scheurman,*" and its adoption would "[i]n effect" overrule *Scheurman. Ante,* pp 169, 170 (opinion of RILEY, J.). *Scheurman,* however, could only be overruled by a decision of this Court holding that the highway exception requires the installation of lighting on state highways or the state or county to remove hedges located on private property that obscure the line of vision at an intersection.

A decision of this Court deciding another case, with different facts, especially a decision that, like *Scheurman,* finds that the state is not subject to liability under the highway exception, would not overrule *Scheurman* merely because the analysis of the later decision holds out the possibility that in some other case the state or the county might be subject to liability under the highway exception for maintenance failures other than failure to repair.

[13] *Scheurman, supra,* p 632, n 23 (opinion of RILEY, J.), pp 651-652 (opinion of BRICKLEY, J.).

C

The first two sentences of the highway exception[14] impose a duty to keep "the traveled roadbed in reasonable repair," and also a duty, and liability for failure to discharge that duty, to "maintain" the highway "in condition reasonably safe and fit for travel."

This Court has, until today, consistently ruled, for over one hundred years—both before and after the 1964 reenactment, in those two sentences of the governmental tort liability act, of language first enacted in 1879 and 1887[15]—that the liability for failure to discharge the duty to maintain the

---

[14] The first two sentences of the highway exception read:

Each governmental agency having jurisdiction over any highway shall *maintain* the highway in *reasonable repair so that it is reasonably safe and convenient for public travel.* Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in *reasonable repair, and in condition reasonably safe and fit for travel,* may recover the damages suffered by him from such governmental agency. [1964 PA 170, § 2, MCL 691.1402; MSA 3.996(102). Emphasis added.]

See n 3 for the full text of § 2, the highway exception of the governmental tort liability act.

[15] The 1879 act read as follows:

That any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all bridges, crosswalks and culverts on the same *in good repair, and in a condition reasonably safe and fit for travel,* by the township, village, city, or corporation whose corporate authority extends over such public highway, street, bridge, crosswalk or culvert, and whose duty it is to keep the same in good repair, such township, village, city, or corporation shall be liable to, and shall pay to the person or persons so injured or disabled, just damages, to be recovered in an action of trespass on the case, before any court of competent jurisdiction. [1879 PA 244. Emphasis added.]

The 1887 act read as follows:

highway in condition reasonably safe and fit for travel extends to failures of design or construction, including failures to install guardrails as reasonably necessary to maintain the improved portion of the highway designed for vehicular travel in condition reasonably safe and fit for travel.

During the seventy-five years before the 1964 reenactment of the 1879/1887 language in the highway exception of the governmental tort liability act, and also during the thirty years after the 1964 reenactment, governmental agencies have been held subject to liability

- for failures to warn of hazards that might not be expected,[16]
- for failures to erect barriers to prevent vehicles from leaving a roadway,[17] and
- for failures of design that created hazards making roads less than reasonably safe and fit for travel.[18]

That any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross-walks and culverts on the same *in reasonable repair, and in condition reasonably safe and fit for travel* by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross-walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction. [1887 PA 264. Emphasis added.]

[16] *Joslyn v Detroit,* 74 Mich 458; 42 NW 50 (1889); *Salvati v Dep't of State Hwys,* n 6 *supra.*

[17] *Malloy v Walker Twp,* 77 Mich 448; 43 NW 1012 (1889); *Arnold v Dep't of State Hwys,* 406 Mich 235; 277 NW2d 627 (1979); *Endykiewicz v State Hwy Comm,* 414 Mich 377; 324 NW2d 755 (1982).

[18] *Malloy v Walker Twp,* n 17 *supra; Peters v Dep't of State Hwys,* 400 Mich 50, 63; 252 NW2d 799 (1977); *Arnold v Dep't of State Hwys,* n 17 *supra; Tuttle v Dep't of State Hwys,* n 6 *supra; Killeen v Dep't of Transportation,* 432 Mich 1; 438 NW2d 233 (1989).

The Legislature, surely aware of the consistent judicial construction, extending for seventy-five years from 1889,[19] nevertheless reenacted in 1964 the same language[20] in the governmental tort liability act.

We all have been the beneficiaries. New roads were designed, and old roads have been redesigned, by the state highway department and county road commissions to reduce the risk of accidents, and to reduce the hazard of accidents that do occur, in compliance with the standard first declared by the Legislature over one hundred years ago, and reiterated thirty years ago, requiring governmental agencies to keep highways[21] in "reasonable repair, and in condition reasonably safe and fit for travel."[22]

### D

In 1889, this Court held that *liability could be imposed because of the absence of barriers or railings* for a death resulting when a horse-drawn passenger wagon left a well-worn path of a road in midwinter.[23] The Court said that the trier of fact could find, on the basis of a statutory obligation to keep highways "in good repair, and in a condition reasonably safe and fit for travel,"[24] that a township was *subject to liability for wrongful death*

[19] See cases cited in notes 16-18.

[20] See n 3.

[21] Defined as including roads and streets. See n 57.

[22] See ns 3 and 15 for text of statutes.

[23] The report does not state the speed of the horse-drawn conveyance, but the speed of the conveyance was surely far less than the speed of automobiles on state and county highways and roads under the jurisdiction of townships, cities, and other municipal corporations.

[24] See n 15 for the full text of the 1879 act.

*resulting from a failure "to provide barriers or railings along the sides"*[25] *of an embankment.*

Ray Chaney similarly claims that liability should be imposed for injuries he claims resulted from the MDOT's failure to provide a properly designed and constructed barrier along the side of an embankment.

In cases decided thereafter, this Court held that the trier of fact may impose liability for failure to provide railings or barriers needed to keep a road reasonably safe and convenient for public travel.[26]

Also relevant—here as in *Mason*—this Court, also in 1889, held that the City of Detroit was subject to liability for injuries suffered by a woman when her carriage encountered, in the nighttime, a pile of sand that had been lying for over a month in the middle of a street on the basis that the city had failed to place lights or other *suitable warning* of the obstruction.

This Court said that the City of Detroit was subject to liability *not only* "for injuries occurring through neglect to keep the streets in *repair,* but also for such as occur by reason of the neglect of the city to keep its streets in a *condition reasonably safe and fit for travel.*"[27] (Emphasis added.)

---

[25] *Malloy v Walker Twp,* n 17 *supra,* p 455.

[26] *Sharp v Evergreen Twp,* 67 Mich 443; 35 NW 67 (1887); *Ross v Ionia Twp,* 104 Mich 320, 324; 62 NW 401 (1895); *Hannon v City of Gladstone,* 136 Mich 621; 99 NW 790 (1904); *Lamb v Clam Lake Twp,* 175 Mich 77; 140 NW 1009 (1913); *Carpenter v Bloomingdale Twp,* 227 Mich 355; 198 NW 912 (1924).

[27] *Joslyn v Detroit,* n 16 *supra,* p 460.
The Court continued:

> The duty is imposed in both cases, and the necessity for it exists in the one case just as much as in the other, and the liability is the same, and it is very manifest that the Legislature intended to make it so.

This Court thus rejected in 1889 the view—one of three "plain meanings" of the highway exception[28]—set forth in the plurality opinion in *Scheurman,* that the only statutory duty imposed by the words "in reasonable repair, and in condition reasonably safe and fit for travel," is to keep roadways "in repair."[29]

This Court's rejection in 1889 of the "repairs only" view was reaffirmed by this Court in 1904,[30] and reiterated in 1967.[31]

---

The Court said that the statute

> requires everything to be done by the city necessary to make travel upon its streets reasonably safe. If in so doing it becomes necessary to place signals or other safeguards at given points, or give other proper warning, it is the duty of the city to see that it is done or that the street is closed to travel; and that duty is imposed by the express language of the statute, and the injury arising from the neglect of such duty to the citizen will make the municipality responsible to the party injured. [*Id.,* p 461.]

[28] See n 9 and ns 70-74 and the accompanying text.

[29] *Joslyn v Detroit,* n 16 *supra,* p 462 (CAMPBELL, J., dissenting); *Malloy v Walker Twp,* n 17 *supra,* p 466 (CAMPBELL, J., dissenting); *McEvoy v Sault Ste Marie,* 136 Mich 172, 183; 98 NW 1006 (1904) (GRANT, J., dissenting).

[30] *McEvoy v Sault Ste Marie,* n 29 *supra.*

[31] *Kowalczyk v Bailey,* 379 Mich 568, 572; 153 NW2d 660 (1967), in which this Court said:

> In both *Joslyn* [n 16 *supra*] and *McEvoy* [n 29 *supra*] dissenting opinions were filed but the views of the two dissenters never have prevailed in this Court. We are not persuaded that we should abandon the carefully considered opinions of this Court in *Joslyn* and *McEvoy,* in favor of the dissenters' views, in applying now the relevantly similar provisions of PA 1909, No 283. It is our conclusion, therefore, that the statute imposed upon cities liability for injuries caused by their negligent failure to remove obstructions in their streets after notice thereof.

The accident in *Kowalczyk* occurred before the enactment of the governmental tort liability act, but the language dealt with in the 1889, 1904 and 1967 cases was carried forward in the 1964 enactment of the governmental tort liability act without substantive change.

E

The plurality opinion in *Scheurman* essentially ignored[32] all prior decisions of this Court. The majority in *Chaney* and in *Mason,* similarly ignores this Court's early decisions and its decisions between 1977 and 1989 construing the first two sentences as incorporated in the 1964 reenactment.

In the first case to reach this Court after the 1964 reenactment of the 1879/1887 language,[33] as the first two sentences of the highway exception, *Tuttle v Dep't of State Hwys,* 397 Mich 44, 45-46; 243 NW2d 244 (1976), this Court held that the Department of State Highways[34] was subject to liability for *"inadequate signalization."*[35]

The following year, in *Peters v Dep't of State Hwys,* 400 Mich 50, 63; 252 NW2d 799 (1977), the

---

[32] With the exception referred to in n 6. See also n 77.

The dissenting opinion in *Killeen v Dep't of Transportation,* n 18 *supra,* p 20, n 5, but not the plurality opinion in *Scheurman,* adverted to *Mullins v Wayne Co,* 16 Mich App 365, 375; 168 NW2d 246 (1969), and the citation there of *Joslyn* (see n 16) and *Malloy* (see n 17). *Mullins* was distinguished on the basis that it involved a "county's duty to repair county roads under MCL 224.21; MSA 9.121, whereas, here this Court is construing a governmental agency's duty to maintain highways under" the highway exception of the governmental tort liability act, and additionally on the basis that the state and not a county was the governmental agency in *Killeen. Joslyn* and *Malloy* were distinguished on the basis that they "were both decided twenty years before the effective date of MCL 224.21; MSA 9.121." See n 3 for the text of MCL 224.21; MSA 9.121.

The dissenting opinion in *Killeen* also adverted to *Endykiewicz,* and expressed disagreement with statements concerning the rules of statutory construction in that opinion. *Endykiewicz,* n 17 *supra,* was not adverted to in the plurality opinion in *Scheurman.*

[33] See n 15 for the text of the 1879/1887 language. See n 3 for the text of the 1964 reenactment.

[34] A predecessor of the MDOT.

[35] The issue in *Tuttle* was whether the Court of Claims judge clearly erred in finding that the highway department was not negligent when the undisputed facts showed that it failed to carry out its own work orders to add flashing lights and other signals at an intersection after its traffic engineers had determined that the existing stop control devices were not sufficiently noticeable. This Court ruled that the Court of Claims judge clearly erred.

plaintiff's decedent was a passenger in an automobile that encountered a body of water that covered the north half of westbound I-94 at a depth of up to ten or twelve inches. The driver lost control of the vehicle, which went into a skid and was struck broadside by a truck. The defect in *Peters* was *not a failure to repair, but a design defect, an insufficiency in the sewer drainage system,* that permitted water to accumulate on the Edsel Ford Expressway.

This Court said that "the *duty* of the defendant[36] is to keep the highway in a *condition reasonably safe and fit for travel,*"[37] *id.,* p 58 (emphasis added), and that the department was subject to liability *whether the defect was in the "design" of the highway, or in the "construction" of the highway, or in the "maintenance" of the highway. Id.,* p 61.

Two years later, in *Arnold v Dep't of State Hwys,* 406 Mich 235, 236; 277 NW2d 627 (1979), the claimed defect was in the design, construction, and maintenance of a *guardrail separating the east and westbound lanes of I-94.* The driver of the automobile in which the plaintiff was riding as a passenger swerved to avoid hitting an automobile directly in front of him, "struck the 10-inch high median curb which effectively catapulted the vehicle over the 20-inch guardrail and into the path of westbound traffic." This Court declared that it is enough if the plaintiff establishes that the defect "rendered the highway not reasonably safe and fit for travel."[38]

---

[36] Department of State Highways, now Michigan Department Of Transportation.

[37] The statement in *Peters* that the duty under the highway exception is "to keep the highway in a condition reasonably safe and fit for travel," and the recognition that the department is subject to liability whether the defect was in design, construction *or* maintenance, is at odds with the statement in the companion case of *Mason* that the highway exception is limited to repair.

[38] *Id.,* pp 236-238.

*Arnold* was followed three years later by *Endyk-iewicz v State Hwy Comm,* 414 Mich 377; 324 NW2d 755 (1982), and ten years later by *Killeen v Dep't of Transportation,* 432 Mich 1; 438 NW2d 233 (1989).

In *Endykiewicz,* factually similar to *Arnold,* this Court held that the State Highway Commission,[39] was subject to liability for a failure of design or construction of *a guardrail separating the north and southbound lanes of the Southfield Express-way.*[40]

Finally, in *Killeen,* this Court, just five years ago, held that the MDOT was subject to liability for failure of design and construction of a "superelevation" at an expressway interchange resulting in injuries when a motor vehicle crossed the center of a highway and rolled down an embankment.[41]

---

The Court rejected the contention of the State Highway Department that a plaintiff must show that a highway defect was "flagrant" or "palpably dangerous." *Id.,* p 238.

The Court reiterated the statement in *Peters* that the " 'duty of the defendant is to keep the highway in a condition *reasonably* safe and fit for travel.' " *Arnold, supra,* p 238. (Emphasis in original.)

[39] A predecessor of the MDOT.

[40] The issue in *Endykiewicz* was whether the State Highway Commission was liable for damages for loss of society and companionship in a wrongful death action arising out of the failure of the commission to maintain a highway in a condition reasonably safe and fit for travel. This Court rejected the contentions that the plaintiff could not recover for the loss of society and companionship because "this statute must be strictly construed," and the courts should "defer to the Legislature's intent to confine narrowly the state's tort liability in highway defect cases." *Id.,* p 384. Contrast the plurality opinion in *Scheurman, supra,* p 627.

[41] In *Killeen v Dep't of Transportation, supra,* p 5, the issue did not concern the meaning of "in reasonable repair, and in condition reasonably safe and fit for travel." The issue was whether the MDOT was subject to liability when it assumes jurisdiction of a county road, and redesigns and reconstructs the road and then returns jurisdiction to the county road commission, for injuries sustained in accidents caused by failures in design or construction while it had jurisdiction, although the accident did not occur until after the department had relinquished jurisdiction. This Court held that the MDOT was subject to liability in such a case for failures in design or construction.

The majority said:

Although this Court, in the thirty years since the enactment of the governmental tort liability act in 1964, has, until today, been true, without dissent,[42] to the well-established precedents consistently applied since 1889, holding governmental agencies subject to liability for failures to warn, for failures to erect barriers, and for failures of design, the Legislature has not changed the statutory standard subjecting governmental agencies to liability for failure to keep highways in reasonable repair, and in condition reasonably safe and fit for travel.

## II

In providing, in the fourth sentence of the highway exception,[43] that the duty "to repair and main-

---

The question presented is whether the highway department is subject to liability under the governmental tort liability act to a person sustaining injury by reason of defects in design or construction of a county road made while the highway department has assumed jurisdiction of the county road where the accident occurs after the highway department has returned jurisdiction to the county road commission. We hold that the highway department is subject to liability for loss suffered as a result of design and construction defects made while it has jurisdiction, and that it is not absolved from responsibility by a retransfer of jurisdiction of the defective road to the county road commission. [*Id.,* pp 4-5.]

See ns 32 and 77 for discussion of the dissenting opinion in *Killeen.*

[42] Excepting only the view expressed in dissent by the author of *Scheurman* in *Killeen v Dep't of Transportation, supra,* p 18 (RILEY, C.J., dissenting). See ns 32 and 77.

[43] The fourth sentence of the highway exception reads:

The *duty* of the state and the county road commissions *to repair and maintain* highways, and the liability therefor, *shall extend* only *to the improved portion of the highway designed for vehicular travel* and *shall not include* sidewalks, crosswalks or *any other installation outside of the improved portion* of the highway designed for vehicular travel. [1964 PA 170, § 2, MCL 691.1402; MSA 3.996(102). Emphasis added.]

See n 3 for the full text of § 2, the highway exception.

tain highways, and the liability therefor" shall not
extend to "any other installation outside of the
improved portion of the highway designed for
vehicular travel," the Legislature did not relieve
the MDOT of its duty, and liability therefor, under
the first two sentences of the highway exception,
to repair and maintain the improved portion of
the highway designed for vehicular travel in condi-
tion reasonably safe and fit for travel, including
installation of guardrails reasonably necessary to
maintain the improved portion reasonably safe
and fit for travel.

A

Although plaintiff's claim in *Endykiewicz* was
for fatal injuries suffered when a vehicle traveled
through a guardrail dividing the northbound and
southbound lanes of the Southfield Expressway,
and Justice COLEMAN's opinion for the Court re-
ferred to the fourth sentence of the highway ex-
ception,[44] none of the justices then on the Court
suggested that that language relieved the State
Highway Commission of its duty and liability re-
specting the guardrail.

B

The concededly narrow,[45] I would say myopic,
view of the meaning of the "any-other-installa-
tion" clause set forth in the plurality opinion in
*Scheurman* was *not* urged by the Attorney Gen-
eral in *Scheurman*. The Attorney General ac-
knowledged in his brief in *Scheurman*: "*Guardrails*

---

[44] The highway provision states that "liability . . . shall extend
only to the improved portion of the highway" . . . . [*Endykie-
wicz, supra,* p 389.]

[45] *Scheurman,* p 627.

*are within the improved portion of the highway* in the same sense as shoulders, to wit: use as an adjunct to the paved portion of the highway." (Emphasis added.)[46]

None of the cases spanning one hundred years, 1889-1989, in which this Court held that the obligation to maintain a highway in condition reasonably safe and fit for travel includes liability for failures of design or construction, including failures to install and maintain reasonably necessary guardrails, were discussed in the plurality opinion.[47]

The Attorney General, representing the MDOT and its predecessor highway authorities during the twenty-two-year period, 1964-1987, did not contend in *Arnold* or *Endykiewicz* that the any-other-installation clause relieved the MDOT of the duty to provide barriers necessary to maintain the improved portion of a highway in condition reasonably safe and fit for travel.

The Attorney General's failure to so assert following the 1964 reenactment of the 1879/1887 language suggests that it was undoubted that the

[46] The Attorney General said that the courts of this state have "found items to be within the improved portion 'an *integral part of the improved portion*' and which '*directly relate* to the statutory duty imposed upon the defendant to maintain the highway in a condition safe and fit for travel,' *Lynes v St Joseph Rd Comm,* 29 Mich App 51, 59; 185 NW2d 111 (1970)."

The Attorney General continued in *Scheurman:* " 'Essentially, *anything intimately connected with vehicular travel and making it safe for travel* has been said to be within the ambit of the abrogation of governmental immunity.' *Tibor v Dep't of State Hwys,* 126 Mich App 159, 163; 337 NW2d 444 (1983)."

In *Tuttle, Endykiewicz,* and *Killeen,* the plaintiffs recovered on the basis that the MDOT and its predecessor state highway authorities had failed to keep the roadways in condition reasonably safe and fit for travel.

The MDOT did not, I acknowledge, assert that the duty and liability set forth in the first and second sentences of the highway exception to keep roadways in condition reasonably safe and fit for travel was superseded by the any-other-installation clause of the fourth sentence.

[47] Except as noted in n 6. See also ns 32 and 77.

Legislature intended that the construction placed on the words "in condition reasonably safe and fit for travel" for over seventy-five years by this Court was incorporated in the highway exception when those words were reenacted with the result that the obligation to provide necessary barriers and warning signs, as required by the 1889 cases of *Malloy* and *Joslyn,* was so incorporated.[48]

C

The fourth sentence of the highway exception is set forth in its entirety in n 43. There are two clauses, the repair-and-maintain clause and the any-other-installation clause:

• The repair-and-maintain clause:

The *duty* of the state and the county road commissions to *repair and maintain* highways, and the liability therefor, *shall extend* only *to the improved portion* of the highway designed for vehicular travel [emphasis added];

• The any-other-installation clause:

and shall not include sidewalks, crosswalks or *any other installation* outside of the improved portion of the highway designed for vehicular travel. [1964 PA 170, § 2, MCL 691.1402; MSA 3.996(102). Emphasis added.]

D

Reading the highway exception as a whole,[49] the

---

[48] See ns 16-18.

[49] I write that the words and sentences of the highway exception should be read as a whole because the fourth sentence does not stand

duty and liability, so *expressly "extended" in the
repair-and-maintain clause to the improved por-
tion of the highway designed for vehicular travel,*
is for failure "to repair *and maintain*" the im-
proved portion. The scope of the obligation to
"repair and maintain" is to keep the improved
portion "in reasonable repair, *and* in condition
reasonably safe and fit for travel." (Emphasis
added.)

State and county liability under the repair-and-
maintain clause indeed extends "*only* to the im-
proved portion of the highway designed for vehicu-
lar travel." (Emphasis added.) The obligation to
keep highways in "reasonable repair, *and* in condi-
tion reasonably safe and fit for travel," neverthe-
less clearly and expressly does so extend to such
improved portion of the highway.[50] That obligation

by itself. All the pertinent language of the highway exception reads
as follows:

> Each governmental agency having jurisdiction over any high-
> way shall *maintain* the highway in reasonable *repair* so that it
> is *reasonably safe and convenient* for public travel. Any person
> sustaining bodily injury or damage to his property by reason of
> failure of any governmental agency to keep any highway under
> its jurisdiction in *reasonable repair,* and *in condition reason-
> ably safe and fit for travel,* may recover the damages suffered
> by him from such governmental agency. The *liability,* proce-
> dure and *remedy* as to county roads under the jurisdiction of a
> county road commission shall be as provided in section 21,
> chapter 4 of Act No. 283 of the Public Acts of 1909, as
> amended, being section 224.21 of the Compiled Laws of 1948.
> The duty of the state and the county road commissions to
> *repair* and *maintain* highways, and the liability therefor, shall
> extend only to the *improved portion of the highway* designed
> for vehicular travel and shall not include sidewalks, crosswalks
> or any other installation outside of the improved portion of the
> highway designed for vehicular travel. [1964 PA 170, § 2, MCL
> 691.1402; MSA 3.996(102). Emphasis added.]

The highway exception, reading all the words together, subjects a
governmental agency to liability for failure to keep "the improved
portion of the highway designed for vehicular travel" "in reasonable
repair, and in condition reasonably safe and fit for travel."

[50] The "improved portion" of the highway is redescribed in the

and liability, under the consistent case law before
and after the 1964 reenactment going back over a
hundred years,[51] extends to a failure of design or
construction, including a failure to warn or to
erect suitable barriers.

We agree with the view set forth in the opinion
concurring in part and dissenting in part in
*Scheurman* that the highway exception

> expresses the Legislature's intent to impose a duty
> on state and county highway authorities to main-
> tain the improved portion of a highway in a condi-
> tion safe and fit for travel and to provide liability
> for the failure to do so. Although the Legislature
> clearly did not intend liability for a failure to
> maintain the *unimproved* portion of the highway
> in a condition safe and fit for travel, nothing in
> the wording of § 2 [the highway exception] sug-
> gests an intent to limit the liability of governmen-
> tal agencies to only certain factors that are neces-
> sary to safely maintain the improved portion of
> the highway. [Emphasis in original.][52]

### III

We agree with the Court of Appeals in the
instant case that the Legislature, in providing in
the any-other-installation clause that the duty to
repair and maintain highways and the liability
therefor shall not include "any other installation
outside of the improved portion of the highway
designed for vehicular travel," relieved the MDOT
of the duty and liability to keep the concrete wall

*Scheurman* plurality opinion as the "physical portion" and "traveled
portion." The redescription of the "improved portion" as the "physi-
cal" or "traveled" portion is inconsequential. *Id.,* p 623.

[51] See notes 16-18.

[52] *Id.,* p 639 (BRICKLEY, J., concurring in part and dissenting in
part).

—in the words of the Court of Appeals, "neither 'roadbed' nor 'designed for vehicular travel' "—in reasonable repair and in condition reasonably safe and fit for travel. 198 Mich App 728, 730; 499 NW2d 29 (1993).

We so agree with the Court of Appeals, not simply because the concrete wall and metal barrier were located immediately beyond, "outside of the improved portion of the highway designed for vehicular travel," but also because the concrete wall and metal barrier were not, as the Court of Appeals observed, designed for vehicular travel. And, thus, the duty to repair and maintain in condition reasonably safe and fit for travel could not extend to an "other installation" such as a concrete wall and metal barrier.

The plaintiff in *Chaney* is not complaining that the concrete wall that was erected was not in reasonable repair, or in a condition reasonably safe and fit for travel on the concrete wall.[53]

The *Chaney* plaintiff complains, rather, under the repair-and-maintain clause, of the failure of the MDOT to design and construct the concrete wall and metal barrier as reasonably necessary to maintain the improved portion of the highway "designed for vehicular travel" in condition reasonably safe and fit for travel.

A barrier or, as in *Mason,* a sign needed to maintain a highway in condition reasonably safe and fit for travel is not itself an "installation" that

[53] The plaintiff in *Mason* is not complaining of a failure of Wayne County to repair and maintain in condition reasonably safe and fit for travel school warning signs that were not erected. He does not complain that he was unable to travel on an imaginary road traversing the tops of school warning signs that should have been erected and located outside the improved portion of the highway. The *Mason* plaintiff complains of the failure of Wayne County to erect school warning signs.

Chaney does not complain that the barrier was not of suitable width or design for ordinary or daredevil driving.

can be repaired and maintained in condition rea-
sonably safe and fit for travel. ·

A literal or "plain" reading—the majority prides
itself on "plain" meanings—of the any-other-
installation clause, relieving the state and counties
of the duty and liability to keep "any other instal-
lation outside of the improved portion of the high-
way designed for vehicular travel" in condition
reasonably safe and fit for travel, does not relieve
the state and counties of their obligation under
the repair-and-maintain clause to keep the "im-
proved portion designed for vehicular travel," not
only in reasonable repair, but also in condition
reasonably safe and fit for travel. That obligation,
as the words "in condition reasonably safe and fit
for travel" have been construed by this Court,
subjects the state and counties to liability for
failures of design or construction, including a fail-
ure to warn, or to erect suitable barriers.

IV

The repair-and-maintain and any-other-installa-
tion clauses need not be read as in conflict. The
any-other-installation clause should be read in
harmony with the repair-and-maintain clause.

A sign or barrier, to be sure, is an installation.
Signs and barriers, indeed, generally are located
outside the improved portion of the highway de-
signed for vehicular travel. But not always. School
warning signs often, in some parts of the state
generally, are stenciled with the word SCHOOL from
left to right on the highway itself.

The words "any other installation," read in the
context of the highway exception as a whole, and
not in isolation or in the abstract, are at least
ambiguous.

I acknowledge that my reading of "any other

installation" deprives it of some of the absolute meaning that might be ascribed to it if one were to read "any other installation" in isolation and in the abstract. However, holding that there is no duty or liability, on the part of the state or counties, to maintain the improved portion of the highway in condition reasonably safe and fit for travel —as those words have been consistently construed by this Court, requiring the installation of necessary barriers and signs—deprives the words "and maintain" in the repair-and-maintain clause of any meaning.

The words "reasonably safe and convenient for public travel," in the first sentence of the highway exception, and the words "in condition reasonably safe and fit for travel," in the second sentence, are stricken of all meaning. The words, in the third sentence, reaffirming the "liability" of and "remedy" against counties for failure to keep county roads "in reasonable repair, so that they shall be reasonably safe and convenient for public travel" under 1909 PA 283, as amended, are changed by judicial fiat to mean "in reasonable repair." The words "and maintain" in the first and fourth sentences are stricken of all meaning.

V

The plurality opinion in *Scheurman* sets forth the history of the fourth sentence of the highway exception. There, not in plain meaning, is to be found the source of the "true intent of the Legislature . . . ."[54]

A

Counties, while subject to liability for failure to

---

[54] *Id.,* p 631.

keep "county roads, bridges and culverts" in "reasonable repair, so that they shall be reasonably safe and convenient for public travel," were not subject to liability for failure to keep sidewalks in reasonable repair, and reasonably safe for pedestrian travel.[55]

The responsibility for repair and maintenance of sidewalks and crosswalks, under the 1879/1887 and subsequent statutes, had been imposed on townships and cities.[56]

The state had not, before 1964, been subject to any statutory liability for failure to keep state highways in reasonable repair and in condition reasonably safe and fit for travel.

Because "highway" was defined in the 1964 reenactment to include sidewalks and crosswalks,[57]

---

[55] *Ferguson v Muskegon Co,* 181 Mich 335; 148 NW 212 (1914). The statute provided:

> It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel. The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system. [1909 PA 283, ch 4, § 21.]

[56] As set forth in the plurality opinion, 1879 PA 244 (see n 15 for text) subjected townships and cities to liability for failure to keep bridges, crosswalks, and culverts, as well as public highways or streets, in good repair, and in condition reasonably safe and fit for travel, and this liability was expanded to include sidewalks in 1887. See n 15. "Good repair" was changed to "reasonable repair" by the same act, 1887 PA 264, see n 15 for text. See *Welton v Crystal Twp,* 152 Mich 486; 116 NW 390 (1908); *Ferguson v Muskegon Co,* n 55 *supra; Union Twp v Mt Pleasant,* 381 Mich 82; 158 NW2d 905 (1968).

[57] "Highway" means every public highway, road, and street which is open for public travel and shall include bridges, sidewalks, crosswalks, and culverts on any highway. The term "highway" does not include alleys, trees, and utility poles. [MCL 691.1401(e); MSA 3.996(101)(e).]

thereby continuing the responsibility therefor of townships and cities, for the maintenance of which neither the state nor the counties had been subject to liability, it was necessary, to preserve the status quo, to exclude state and county responsibility for "sidewalks and crosswalks."

Reading the any-other-installation clause in light of that history, it becomes clear that at least the exclusion for sidewalks and crosswalks is unremarkable and sought merely to preserve the status quo so that the state and county would not be responsible for the maintenance and repair of sidewalks and crosswalks.[58] The legislative purpose was not to create an artificial distinction, regarding the duty to erect warning signs and barriers, between highways under the jurisdiction of the state and counties and roads and streets under the jurisdiction of the cities and townships.

B

To be sure, the any-other-installation clause excludes responsibility for the repair and maintenance not only of sidewalks and crosswalks, but also of "*any other installation* outside of the improved portion of the highway designed for vehicular travel." (Emphasis added.)

---

[58] To be sure, as a practical matter, the state and the counties, when they repair and maintain a state or county road, probably also repair and maintain crosswalks traversing such roads.

Sidewalks may or may not be an "installation outside of the improved portion of the highway." Crosswalks are, by definition, part of the highway.

But the responsibility of the state and counties is to maintain roadways in reasonable repair, and in condition reasonably safe and fit for travel by *vehicles* authorized to use the roads. It would appear —but because this is not an issue in this case, I do not formally address it—that, to the extent that that standard is less than what would constitute reasonable repair, and in condition reasonably safe and fit for travel by *pedestrians,* the townships and city continue to be responsible.

The any-other-installation language appears to have been added to cover a case such as *Roy v Dep't of Transportation,* 428 Mich 330; 408 NW2d 783 (1987), in which we all agreed that a bicycle path adjacent to I-275 was an "other installation outside of the improved portion of the highway designed for vehicular travel," and that, therefore, the MDOT was not subject to liability for injuries suffered on the bicycle path.[59]

"Installations" that, like sidewalks, crosswalks, and bicycle paths, can be traveled upon and that, but for the any-other-installation clause, might give rise to claims against the state and counties for failures to repair and maintain, include city and township road and street bridges traversing state and county roads, highways, and expressways, pedestrian bridges, railroad bridges, grassy and other areas beyond the shoulders rising or sloping away from expressway lanes, the median between expressway lanes, truck stops and weigh stations, rest areas,[60] scenic overlooks, overlooks from schoolyards and other public and private lands, and drains and ditches.[61]

---

[59] *Roy* was decided by per curiam opinion. We all agreed that the highway exception "does not extend to injuries which arise from detached, ancillary installations, such as sidewalks, crosswalks, and bicycle paths." *Id.,* p 331.

Roy was riding his bicycle on a bicycle path adjacent to a portion of I-275. The complaint alleged that there was a " 'substantial asphalt bump,' " and that the MDOT's agents had cut weeds and piled them over the area of the bump, and, as a result, he was unable to see the bump and was thrown from his bicycle when he encountered it. *Id.,* p 332.

[60] The improved portion of the roadway leading to and from rest stops and truck stops, and possibly the parking areas, are improved portions of the highway designed for vehicular travel. The remainder of the areas between the roadway of the expressway and the outer boundaries of rest stops and truck stops would be an installation outside the improved portion of the highway designed for vehicular travel.

[61] The state and the counties have not been subject to liability for the repair and maintenance of drains and ditches paralleling the

VI

The author of the concurring opinion in *Chaney*
concludes that "the bridge railing [in *Chaney*] does
not directly and integrally affect vehicular travel
along the improved portion of this highway. Nei-
ther a guardrail nor a concrete abutment, located
beyond the shoulder of a highway, has any affect
upon the safe and convenient passage of vehicles
while on the improved portion."[62]

If Ray Chaney had been catapulted onto the
improved portion of the highway below, rather
than onto the median, it would, I think, have had
an "affect upon the safe and convenient passage of
vehicles while on the improved portion." Most
motorists would seek to steer clear of, some would
even stop, to render assistance to, a man lying
injured in the middle of an expressway. One can
easily visualize the potential for catastrophe.

right of way of a highway even if they were located within the
boundaries of the right of way.

I have made these observations with regard to a median, rest stops,
truck stops, drains and ditches, and other installations with some.
reluctance because the issues in the instant case do not concern such
installations, and there has been no briefing or argument. I make
these observations because the construction placed by the majority on
the fourth sentence attributes a meaning to "any other installation"
that, in my judgment, is clearly wrong, and I feel obliged to show that
there is another reading that gives those words substantial meaning.

[62] *Ante*, p 161 (opinion of BRICKLEY, J.).

The opinion declares that it reads *Scheurman* as reiterating the
general rule that the "highway exception does not *normally* include
installations physically separate and detached from the paved or
traveled portion of a highway." *Id.*, p 157 (emphasis added). The
opinion continues that the limiting language of the fourth sentence of
the highway exception "creating liability only for 'the improved
portion of a highway designed for vehicular travel,' encompasses (1)
installations physically located within that traveled or paved portion
of a highway designed for vehicular travel, or (2) some installations,
even those physically located beyond the traveled or paved portion of
a highway, that directly and integrally affect safe vehicular travel on
this improved portion." *Id.*, p 158.

The language in (2) above parallels the "integral" language in the
concurring opinion in *Scheurman*. See text accompanying n 5 for the
text of that opinion.

*Arnold* and *Endykiewicz* show that the absence
of properly designed and constructed guardrails,
separating the east and westbound lanes of I-94 in
*Arnold* and the north and southbound lanes of
Southfield in *Endykiewicz,* affects the safe and
convenient passage of vehicles while on the im-
proved portion.[63]

Metal barriers were erected between the north
and southbound lanes of the early stages of the
Lodge Expressway after innumerable accidents
that injured or killed not only drivers and passen-
gers in vehicles that crossed the center line into
the opposite lane, but also drivers and passengers
traveling in the opposite direction. Neither lane of
an expressway is in "condition reasonably safe and
fit for travel" without barriers between the lanes,
barriers which, over the years, have been modern-
ized from the skimpy metal barriers first mounted

[63] In *Fogarty v Dep't of Transportation,* 200 Mich App 572; 504
NW2d 710 (1993), formal abeyance for *Mason,* February 28, 1994
(Docket No. 97248), the plaintiff's decedent was killed when his
automobile was struck head on by an automobile being driven by the
defendant's decedent, Mancini. Mancini was traveling southbound on
I-75 when he lost control of his vehicle, passed through a grassy
median, and entered the northbound lanes in which the plaintiff's
decedent was traveling. The plaintiff claims that the MDOT failed to
adequately design, construct, and repair the median.

The Court of Appeals held that the grassy median is not part of the
highway designed for vehicular travel. While the MDOT is not required
to repair and maintain the median in condition reasonably safe and
fit for travel, and as set forth in text accompanying n 60, the median
is generally an "other installation," that does not relieve the MDOT of
the obligation to erect barriers necessary to maintain the improved
portion of a highway, such as expressway lanes moving in opposite
directions, in condition reasonably safe and fit for travel.

See also *Sinishtaj v Dep't of State Hwys,* unpublished opinion per
curiam of the Court of Appeals, issued April 30, 1993 (Docket No.
135368), formal abeyance for *Chaney,* December 3, 1993 (Docket No.
96641). The plaintiff is the guardian of a woman who was hurt when
her automobile went over a guardrail on M-59 near Adams Road. She
claims the MDOT breached its duty to keep M-59 in a manner reason-
ably safe and fit for public travel. The woman's automobile struck a
guardrail, went over the guardrail, and rolled down a steep embank-
ment. The Court of Appeals granted summary disposition on the basis
of its decision in *Chaney* and *Scheurman.*

on wood stakes on the Lodge to sturdy concrete barriers.

In *Gregg v Dep't of State Hwys,* 435 Mich 307, 315; 458 NW2d 619 (1990), decided after *Scheurman,* the majority held that Gregg could maintain an action for injuries received when his bicycle struck a pothole located within two white lines demarking a bicycle path between the traveled portion of the highway and its paved shoulder. The alleged defect in this case occurred on a bicycle path that the majority concluded, quoting from the syllabus, "unquestionably comprised part of the improved portion of the highway designed for vehicular travel and not on an installation separated and detached from the improved portion."[64]

The majority in *Gregg* said that the contention that the Legislature did not intend to include the shoulder of a highway within the highway exception

> has an obvious flaw: it flies in the face of common experience. Any motorist who has ever experienced a highway emergency understands that shoulders are essential to a safe modern highway. To get on or off a shoulder to stop, park, or leave standing a vehicle, motorists must travel on the shoulder.
>
> At the high speeds of modern vehicles, such an endeavor often results in significant travel, "in the ordinary sense," on the shoulder of a highway. Indeed, it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort. [*Id.,* p 315.]

[64] One justice dissented, stating that a shoulder of a highway is not within the highway exception because it is not designed for vehicular travel but rather for the temporary accommodation of disabled or stopped vehicles. *Gregg, supra,* p 317 (GRIFFIN, J., dissenting).

The author of *Scheurman* dissented, stating that
while a plain reading of the definition of shoulder
in the Motor Vehicle Code precluded the extension
of the government's duty to maintain highways
pursuant to the highway exception to road shoul-
ders, quoting again from the syllabus, "the defini-
tion is logically inconsistent and does not comport
with the realities of highway driving," and the
Legislature should amend the statute.[65]

The argument that the Legislature did not in-
tend to include a concrete wall or barrier running
alongside the shoulder of a highway within the
highway exception has a similarly obvious flaw. A
motorist who, like the driver in *Arnold*,[66] has
experienced a highway emergency necessitating
that he move onto the shoulder understands that
where the far side of a shoulder is a precipice, as
in the instant case where the ramp was an over-
pass of I-94, a barrier on the far side of the
shoulder is as "essential to a safe modern high-
way" as the shoulder itself.

The majority slices the bologna far too thin in
holding that the Legislature intended that a shoul-
der be included within the highway exception but
not a barrier alongside the shoulder.

This is not a case where the MDOT saw no need
to install a barrier. We are long past the day when
highway authorities might ordinarily ignore the
need for barriers when designing a highway. Mani-
festly a barrier is essential wherever the improved
portion of the highway is a bridge, overpass, or
otherwise like a cliff in the sense that without a
barrier a motorist forced off the improved portion
of the highway would be heading straight down to
his doom.

Those of us who drive on Michigan's highways

---

[65] *Gregg, supra,* p 308 (RILEY, C.J., dissenting).

[66] See text accompanying n 38.

know from experience that, especially during inclement weather, automobiles not infrequently spin out immediately in front of other motorists. The choice, to be made in a split second, is to drive straight ahead—assuring what in effect will be a head-on collision—or to turn to the left or right, like the driver in *Arnold.* Unless the area to the left or right is gradually graded, a barrier immediately beyond the shoulder is essential *to maintain* the improved portion of the highway in condition reasonably safe and fit for travel.

## VII

The statement in the plurality opinion in *Scheurman,*[67] —that the state and counties (and it would appear, by necessary implication, townships and cities) are subject to liability *only for a failure to repair* whatever highway, road, or installation has been constructed, however hazardous, as a result of defects in design or construction, the highway, road, or installation may be—removes all meaning from most of the operative language of the highway exception, and renders most of the operative language superfluous.[68]

If *that* reading were correct, the Legislature would not have reenacted the highway exception without first striking, rather than enacting, the words indicated in the following:

---

[67] *Id.,* p 631.

[68] In a recent opinion, construing the gross negligence exception to employee governmental immunity, MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), a majority observed:

It defies common sense and the responsible exercise of our authority to conclude that the Legislature would have provided protection tantamount to eliminating liability without having commented on it. [*Dedes v Asch,* 446 Mich 99, 115; 521 NW2d 488 (1994).]

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair *so/that/it/is/reasonably/safe/and convenient/for/public/travel.* Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, *and/in/condition/reasonably/safe/and fit/for/travel,/*may recover the damages suffered by him from such governmental agency. The *liability/* procedure *and/remedy/*as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. The duty of the state and the county road commissions to repair *and/maintain/*highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel.[69]

If that reading were correct, the Legislature

- would have stopped with the words "reasonable repair" when writing the first and second sentences of the highway exception, and

- would not have, in the third sentence, reaffirmed the "liability" and "remedy" against the county under 1909 PA 283, as amended, and

- would have stopped with the word "repair" in the first clause of the fourth sentence, and would not have added the words "and maintain" immediately thereafter.

[69] The plurality opinion in *Scheurman* reads out from the highway exception the words stricken in the foregoing text, and in effect renders the highway exception almost no exception at all.

### VIII

The plurality opinion in *Scheurman* discerned
that the "plain meaning" of the highway exception
is that the "true intent of the Legislature is to
impose a duty to keep the *physical portion* of the
traveled roadbed in reasonable *repair.*"[70]

### A

That "true intent"—liability arises under the
highway exception *only* for failure to keep the
*physical portion* of the roadbed in *repair*—so dis-
cerned in the plurality opinion in *Scheurman* is
the *third "plain meaning"* of the highway excep-
tion set forth in *Scheurman.*

The *second "plain meaning,"* possibly portending
the third "plain meaning," precludes recovery un-
less the defective condition is "*part of* the im-
proved portion of the highway designed for vehicu-
lar travel."[71] The second "plain meaning" does not
preclude recovery for defective conditions of design
or construction. It is not until the obiter dictum[72]
of the third "plain meaning," limiting recovery to
loss resulting from a failure to keep the "physical
portion" of the roadbed in reasonable "repair,"
that recovery for design or construction defects of
the roadbed, by that obiter dictum, is precluded.

The *first of the three "plain meanings"* set forth

---

[70] *Id.,* p 631.

[71] *Id.,* p 623.

[72] Neither *Scheurman* itself nor its companion case, *Prokop*, con-
cerned allegations of design or construction defects. The third "plain
meaning" set forth in the plurality opinion in *Scheurman*, stating
that the "true intent of the Legislature is to impose a duty to keep
the *physical portion* of the traveled roadbed in reasonable *repair*,"
went beyond what was necessary to decide either *Scheurman* or
*Prokop.* Both cases could have been decided with the same conclusion
of no governmental liability under either the first or second "plain
meanings" set forth in the plurality opinion in *Scheurman. Id.,* p 631.

in the plurality opinion in *Scheurman*—stating
that the fourth sentence of the highway exception
"*refers only* to the traveled portion, paved or
unpaved, of the roadbed actually designed for
public vehicular travel,"[73]—mandates no Thermi-
dorian obliteration of the highway exception.[74]

As a postscript, it is once again clear that "[t]he
notion that because the words of the statute are
plain, its meaning is also plain, is merely perni-
cious oversimplification."[75]

B

The three "plain meanings" derived by the plu-
rality in *Scheurman*, I expect, are attributable to a
failure to read all the words of the highway excep-
tion together. *There is no recognition in the plu-
rality opinion in Scheurman that the fourth sen-
tence of the highway exception does not appear in
isolation. There is no reference to or any discus-
sion whatsoever of "in condition reasonably safe
and fit for travel" set forth in the second sentence
of the highway exception.*

*Scheurman* selectively quotes the highway ex-
ception. The opinion quotes, on page 630, the first
sentence of the highway exception *and omits the
second sentence which provides for governmental
liability.* The opinion thus fails to set forth all the

[73] *Id.*, p 623.

[74] This first "plain meaning" of the fourth sentence, read, as it must
be read, in conjunction with the language of the second sentence, "in
reasonable repair, and in condition reasonably safe and fit for travel,"
means that a governmental agency is subject to liability, in the words
of the plurality opinion in *Scheurman*, for a failure to keep "the
traveled portion, paved or unpaved, of the roadbed actually designed
for public vehicular travel" in reasonable repair, and in condition
reasonably safe and fit for travel. That is the correct meaning of the
fourth sentence. *Id.*, p 623.

[75] *United States v Monia*, 317 US 424, 431; 63 S Ct 409; 87 L Ed 376
(1943) (Frankfurter, J., dissenting).

pertinent words of the highway exception. It focuses in isolation on the first and fourth sentences of the highway exception.

Omitted—dismissed without reference, as all prior precedent is dismissed—is the operative statutory language, set forth in the second sentence, requiring that the highway be kept both "in reasonable repair, *and* in condition reasonably safe and fit for travel." (Emphasis added.) *Those words —the statutory standard—do not appear anywhere in the plurality opinion in* Scheurman.[76]

## IX

In conclusion, the majority misreads the legislative purpose in adding the any-other-installation clause in the fourth sentence.

That sentence was crafted to avoid state and county responsibility for the repair and maintenance of sidewalks and crosswalks, traditionally the responsibility of townships and cities, and also crafted to eliminate state and county responsibility for the repair and maintenance of installations like bicycle paths, bridges, and medians adjacent to, traversing, or running alongside, state and county highways.

That sentence was not crafted to eliminate the liability of the state and counties, and by implication cities and townships, for design and construction defects and for all other failures to maintain, as distinguished from repair, highways in condition reasonably safe and fit for travel.

---

[76] The plurality opinion quoted only the first sentence of the highway exception, obligating a governmental agency to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." Those words, standing alone, might have been read—they were not (see ns 16-18)—by this Court when it first confronted the issue over a hundred years ago as requiring only reasonable repairs.

A

The new meaning developed by the new major-
ity purposefully ignores one hundred years of adju-
dication by this Court. Not one case decided by
this Court before the advent of the new majority,
during the over one-hundred-year history of "in
reasonable repair, and in condition reasonably safe
and fit for travel," is distinguished.

> A substantial departure from precedent can only
> be justified, I had thought, in the light of experi-
> ence with the application of the rule to be aban-
> doned or in the light of an altered historic environ-
> ment.
>
> *   *   *
>
> A basic change in the law upon a ground no
> firmer than a change in our membership invites
> the popular misconception that this institution is
> little different from the two political branches of
> the Government. No misconception could do more
> lasting injury to this Court and to the system of
> law which it is our abiding mission to serve.
> [*Mitchell v W T Grant Co,* 416 US 600, 634, 636; 94
> S Ct 1895; 49 L Ed 2d 406 (1974) (Stewart, J.,
> dissenting).]

The new majority indulges itself, masked by
"plain meaning" and "strict construction" in
heavy-handed judicial legislation, rendering the
highway exception devoid of practical meaning.

B

It is noteworthy that the view expressed in the
plurality opinion in *Scheurman,* based on the
fourth sentence of the highway exception, was not
set forth in dissent in *Killeen,* where another
analysis reaching the same conclusion was prof-

fered.[77] It is remarkable that the law of the high-
way exception has been transformed by an after-
thought that was not urged by the Attorney Gen-
eral in behalf of the MDOT before it was thrust
upon the profession in the plurality opinion in
*Scheurman.*

The situation sense[78] that intuitively guides the
author of *Scheurman* was not informed by any
consideration in *Scheurman* of the second sentence
of the highway exception, imposing liability for
failure to keep a highway "in reasonable repair,
*and* in condition reasonably safe and fit for trav-
el,"[79] or by any consideration in *Scheurman* of the

---

[77] In *Killeen, supra,* p 18, the author of *Scheurman* dissented
stating:

> It is my opinion that the highway exception to Michigan's
> governmental immunity statute encompasses only a duty of
> maintenance and does not include liability for the negligent
> design and construction of highways.

That statement in *Killeen* was not based on the any-other-installa-
tion clause in the fourth sentence of the highway exception. Indeed,
the thought that the fourth sentence might provide a basis for
holding that there is no governmental liability for "negligent design
and construction of highways" was so far out of mind that the fourth
sentence was not quoted in the dissenting opinion. The quotation of
the highway exception set forth in the dissenting opinion concluded
with the third sentence. *Id.,* p 20 (RILEY, C.J., dissenting).

The view expressed in the dissenting opinion was based, rather, on
the first sentence of the highway exception. The dissenting justice
expressed her position in the following language:

> In my view, the Legislature's choice of the words, "shall
> maintain the highway in reasonable repair," indicates its inten-
> tion merely to impose a duty of *maintenance* upon the govern-
> mental agency having jurisdiction over a highway. Further-
> more, I interpret "maintain . . . in reasonable repair" as en-
> compassing only those repairs necessary as a result of normal
> highway usage. The statute does not impose a duty to repair
> defects in design or construction. [*Id.* Emphasis in original.]

[78] Llewellyn, Common Law Tradition, Deciding Appeals, p 206.
[79] See n 76 and accompanying text.

prior decisions of this Court that were essentially ignored.[80]

## x

I would remand in *Chaney* to the circuit court for trial to determine the evidentiary support for Chaney's claims of design and construction failure, and for his other claims.[81]

Mallett, J., concurred with Levin, J.

---

[80] Except as noted in n 6. See also ns 32 and 77.

[81] See *ante,* pp 152-153 (opinion of Brickley, J.).